MICHAEL H. GRISHAM, Appellant, v. SUSIE L. GRISHAM; and ANITA WEBSTER, Respondents.

No. 55394

MICHAEL H. GRISHAM, Appellant, v. SUSIE L. GRISHAM, Respondent.

No. 57433

December 6, 2012            289 P.3d 230

*Robert W. Lueck, Esq.*, Las Vegas, for Appellant.

*Smith & Taylor* and *Radford J. Smith*, Henderson, for Respondent Susie L. Grisham.

*Webster & Associates*, Las Vegas, for Respondent Anita A. Webster.

Before SAITTA, PICKERING and HARDESTY, JJ.

## OPINION

By the Court, PICKERING, J.:

This appeal challenges a final divorce decree based on a written but unsigned property settlement agreement. The district court incorporated the agreement into its decree based on the parties' testimony, in open court, that they stipulated to its terms. The district court admitted the draft as a hearing exhibit and approved the oral stipulation by minute order. This procedure complied with applicable district court rules, which obviates any issue as to the statute of frauds, and the draft otherwise met the requirements for an enforceable contract. We affirm.

### I.

The morning of the first day of trial, the parties appeared with their lawyers to advise that they had settled. They had negotiated based on a draft property settlement agreement (PSA). The final draft contained some last-minute handwritten changes, and the lawyers had not had time to prepare a clean execution copy. They asked to put the settlement on the record and to proceed with an uncontested divorce prove-up hearing. This would leave undone only the ministerial tasks of preparing and signing a clean copy of the PSA and entering the final decree.

Both appellant Michael Grisham and respondent Susie Grisham testified at the hearing, as did a third-party witness to Susie's Nevada residency. Most of the discussion and testimony focused on

the PSA, which was admitted as Exhibit A. The lawyers read into the record the few handwritten notations on the draft and stipulated that the PSA, with its handwritten changes, would "be binding on the parties today":

> Your Honor, what our intention is with regard to Exhibit A is, like I say, there's some interlineations. What we'd like to do is have the terms entered as an exhibit and be binding on the parties today. Then what we'd like to do is to provide a clean copy, which will be fully executed by the parties again today, and then submit all of that by way of a decree of divorce.

Under questioning, first by his lawyer then by Susie's, Michael testified that he had reviewed, understood, and agreed to the PSA. He acknowledged its principal terms. He also confirmed that he recognized he would be bound by the PSA. Susie testified to similar effect as Michael.

At the end of the hearing, the court orally accepted the settlement. The hearing minutes give the following recap:

> Plaintiff, Defendant and [the] resident witness, sworn and testified. COURT ORDERED, absolute DECREE OF DIVORCE is GRANTED pursuant to the terms and conditions as outlined in the proposed Property Settlement Agreement, marked and admitted as Exhibit A, and lodged in the left hand side of the file.

Michael's lawyer generated a clean copy of the PSA, which Susie and her lawyer signed and returned. Michael did not sign, first asking for minor revisions, then not answering his lawyer's letters and calls. Eventually, Michael's lawyer, his fourth, withdrew, asserting an attorney's lien, which the district court reduced to judgment.

After several months with no case progress, Susie moved for entry of a divorce decree based on the PSA. Representing himself, Michael did not file a written opposition to Susie's motion but moved for a mistrial. Although Michael refused to sign the PSA, Susie argued that the district court could enforce the PSA based on the prove-up hearing transcript and minute order. After further proceedings, including a hearing at which Michael appeared and orally opposed Susie's motion, the district court entered a final written decree incorporating the PSA. It also denied Michael's motion for mistrial.

Michael appeals both the decree incorporating the PSA and the judgment adjudicating the attorney's lien.[1]

---

[1]Michael filed his appeal in proper person. He retained appellate counsel after this court entered an order requesting supplemental briefs.

## II.

## A.

District Court Rule 16 defines the conditions under which a court may, on motion, enforce an agreement to settle pending litigation. Its language is somewhat oblique:

> No agreement or stipulation between the parties in a cause or their attorneys, in respect to proceedings therein, will be regarded unless the same shall, by consent, be entered in the minutes in the form of an order, or unless the same shall be in writing subscribed by the party against whom the same shall be alleged, or by his attorney.

*See also* EDCR 7.50 (replicating DCR 16 with minor revisions). Despite its awkward wording, DCR 16's application is straightforward: An agreement to settle pending litigation can be enforced by motion in the case being settled if the agreement is "either . . . reduced to a signed writing or . . . entered in the court minutes following a stipulation." *Resnick v. Valente*, 97 Nev. 615, 616, 637 P.2d 1205, 1206 (1981) (applying DCR 24, later renumbered DCR 16).

DCR 16 applies to divorce and dissolution disputes equally with any other kind of civil litigation. *See Grenz v. Grenz*, 78 Nev. 394, 399, 374 P.2d 891, 894 (1962) (interpreting DCR 16's predecessor). The rule gives "the court . . . an efficient method for determining genuine settlements and enforcing them." *Resnick*, 97 Nev. at 616, 637 P.2d at 1206. It "does not thwart the policy in favor of settling disputes; instead, it enhances the reliability of actual settlements." *Id.* at 616-17, 637 P.2d at 1206.

Courts elsewhere, by statute, court rule, or common law, similarly enforce oral settlement agreements—even agreements otherwise subject to the writing requirement of a statute of frauds—if put on the record and approved in open court. *See In re Marriage of Assemi*, 872 P.2d 1190, 1195 (Cal. 1994) (applying Cal. Civ. Proc. Code § 664.6); *In re Dolgin Eldert Corporation*, 286 N.E.2d 228, 232 (N.Y. 1972) (applying N.Y. C.P.L.R. 2104); *Matter of Estate of Eberle*, 505 N.W.2d 767, 770 (S.D. 1993) ("Oral stipulations of the parties in the presence of the court are generally held to be binding, especially when acted upon or entered on the court record . . . ."). A "traditionally favored device" for fostering authentic and reliably recorded settlements, *Rubenfeld v. Rubenfeld*, 720 N.Y.S.2d 29, 32 (App. Div. 2001), the procedure

dates back at least to the nineteenth century. Thus, writing in 1889, Justice Oliver Wendell Holmes repelled a statute of frauds challenge to a stipulated oral agreement, stating simply: "It is a sufficient answer to this proposition that the statute [requiring a signed writing] plainly is not intended to apply to an agreement like the present, made in open court, and acted on by the court." *Savage v. Blanchard*, 19 N.E. 396, 396 (Mass. 1889). "[T]he formality, publicity, and solemnity of an open court proceeding," *Dolgin Eldert Corporation*, 286 N.E.2d at 233, protects "parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle." *Assemi*, 872 P.2d at 1208 (Kennard, J., dissenting). In addition, placing the agreement on the record in open court ensures that there is a formal record "to memorialize the critical litigation events [and, modernly,] a transcript beyond dispute and the fallibility of memory." *Dolgin Eldert Corporation*, 286 N.E.2d at 233; *see Haley v. Eureka Co. Bank*, 20 Nev. 410, 421-22, p. 1098, 1101 (1889).

The PSA included promises affecting interests in land, making it arguably subject to one or more Nevada statutes of frauds.[2] Michael's refusal to sign the PSA does not trigger the statute of

---

[2]*See* NRS 111.205(1) (requiring a properly executed instrument to convey an interest in land); *compare Schreiber v. Schreiber*, 99 Nev. 453, 455, 663 P.2d 1189, 1190 (1983) (accepting appellant's statement that "a property settlement agreement is required to be in writing" (citing NRS 123.220)), *with Anderson v. Anderson*, 107 Nev. 570, 573 n.1, 816 P.2d 463, 465 n.1 (1991) (SPRINGER, J., concurring) (criticizing *Schreiber*'s "misleading dicta"). We also noted and requested supplemental briefing in this case on NRS 123.270, which provides that "[a]ll marriage contracts or settlements must be in writing, and executed and acknowledged or proved in like manner as a conveyance of land is required to be executed and acknowledged or proved." *See also* NRS 123A.040 (requiring a premarital agreement to be written and signed but not requiring acknowledgment). Unchanged since its enactment in 1873, 1 Nev. Compiled Laws § 176 (1873), NRS 123.270's reference to "marriage settlement" historically signified "[t]he conveyance of an estate . . . made on the prospect of marriage, for the benefit of the married pair, or one of them, or for the benefit of some other person, as their children," 2 *Bouvier's Law Dictionary* 519 (11th ed. 1864), "in contemplation of marriage." *Id.* at 111; *cf. Occhiuto v. Occhiuto*, 97 Nev. 143, 147, 625 P.2d 568, 570 (1981) (NRS 123.270 did not apply absent "allegations that an[ act] was either done or withheld in contemplation of marriage"). Whether comparable statutes apply to settlements in contemplation of divorce, as opposed to marriage is unsettled. *Stevens v. Stevens*, 16 P.3d 900, 904 (Idaho 2000) (statute applies equally to contracts in contemplation of divorce as to marriage); *contra Fox v. Fox*, 731 S.E.2d 676, 678 (Ga. 2012). We do not resolve the issue here because even states that apply their version of NRS 123.270 to contracts entered into in contemplation of divorce recognize that such statutes do not apply to the long-standing "practice of taking oral stipulations in open court in divorce cases." *Stevens*, 16 P.3d at 905.

frauds, though, so long as the in-court proceedings respecting the PSA satisfy DCR 16. "A stipulated judgment made in open court is not within the statute of frauds even though its subject matter [is] real property." *Eberle*, 505 N.W.2d at 771. *Accord Powell v. Omnicom*, 497 F.3d 124, 129 n.2 (2d Cir. 2007) ("[T]he requirement that the settlement be on the record and in open court serves as a limited exception to the Statute of Frauds."); *Sparaco v. Tenney*, 399 A.2d 1261, 1262 (Conn. 1978) ("A stipulated judgment made in open court is not within the Statute of Frauds, . . . even though its subject matter was real property."); *Kalman v. Bertacchi*, 373 N.E.2d 550, 556 (Ill. App. Ct. 1978) ("It is not the intention of the Statute of Frauds to affect stipulations made in a court and subject to the court's supervision and control[; t]he purpose of the Statute is not forsaken in view of the fact that proof of the existence of an agreement is a matter of court record and cannot be disputed."); *Dolgin Eldert Corporation*, 286 N.E.2d at 232 (historically, "[t]he rule had always been that oral stipulations or concessions made in open court, despite statutory or rule requirements for writings, would be enforced over the objection of lack of a subscribed writing"); *Thomas v. Thomas*, 449 N.E.2d 478, 484 (Ohio Ct. App. 1982) ("[T]he Statute of Frauds has no application to an 'in-court' settlement stipulation . . . .").

## B.

The question then is: Did the in-court proceedings establish the PSA as an enforceable settlement agreement under DCR 16? When parties to pending litigation enter into a settlement, they enter into a contract. *Mack v. Estate of Mack*, 125 Nev. 80, 95, 206 P.3d 98, 108 (2009). Such a contract is subject to general principles of contract law. *Id.*[3] In addition to complying with DCR 16's procedural requirements, a stipulated settlement agreement requires mutual assent, *see Lehrer McGovern Bovis v. Bullock Insulation*, 124 Nev. 1102, 1118, 197 P.3d 1032, 1042 (2008), or a "meeting of the minds," *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005), on "the contract's essential terms." *Certified Fire Prot. v. Precision Constr.*, 128 Nev. 371, 378, 283 P.3d 250, 255 (2012). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite" for a court "to ascertain what is required of the respective parties" and to "compel compliance" if necessary. *May*, 121 Nev. at 672, 119 P.3d at 1257; *accord Eberle*, 505 N.W.2d at 770.

---

[3]Although *Mack* suggests in dictum that consideration is required to enforce an in-court settlement agreement, 125 Nev. at 95, 206 P.3d at 108, this is contrary to the Restatement (Second) of Contracts § 94 (1981), which states: "A promise or agreement with reference to a pending judicial proceeding, made by a party to the proceeding or his attorney, is binding without consideration."

## 1.

Michael argues, first, that the proceedings before the district court did not comply with DCR 16. He complains that the parties did not read the entire 20+ page PSA out loud into the record but instead made the PSA a hearing exhibit, covering orally only its principal terms and interlineated changes. Relatedly, he argues that the minutes recording the court's oral decision to grant a divorce based on the PSA were insufficiently specific. "Given that the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, the exercise of that power is particularly appropriate for deferential review." *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). We therefore review the district court's decision to proceed as it did for an abuse of discretion, *id.*, and find none.

Although compliance with DCR 16 removes the PSA from the purview of the statute of frauds, it is significant in determining whether DCR 16 was satisfied that Michael's testimony fulfilled the purposes of a statute of frauds. "While recorded testimony has no signature, a signature's only purpose is authentication, and this is amply supplied in the case of an admission in court." *Kalman*, 373 N.E.2d at 556. The hearing transcript establishes that Michael acknowledged, under oath, the PSA's key terms, that he had reviewed it, and that he agreed to its terms. The fact that this testimony, sufficient to satisfy any arguably applicable statute of frauds, in turn incorporated by specific reference a longer unsigned writing does not undermine its effectiveness. *See* 10 Richard A. Lord, *Williston on Contracts* § 29:29 (West 2012) (" 'The writing, in order to have a memorandum to satisfy the Statute of Frauds need not be contained in any one paper, but may include unsigned writings . . . united by content or reference, and even, in a proper framework, united by parol evidence.' " (quoting *Papaioannou v. Britz*, 139 N.Y.S.2d 658, 662 (App. Div. 1955))). Someday, a case may come where an in-court proceeding is so truncated by reliance on ignored exhibits as to defeat DCR 16's cautionary purpose, but this is not that case. *See Perryman v. Perryman*, 117 S.W.3d 681, 686 (Mo. Ct. App. 2003) (testimony establishing that a " 'Memorandum of Agreement' and its attached exhibits outlined all of the terms of the[ parties'] agreement and that they each understood the agreement's terms, accepted its terms and agreed to be bound by [them]" made the oral settlement agreement, incorporating the written draft, "sufficiently spread upon the record [to be] enforceable").

Nor do we credit Michael's argument that the court minutes incorporating the PSA failed to satisfy DCR 16. *Casentini v. Hines*,

97 Nev. 186, 625 P.2d 1174 (1981), is inapposite. In *Casentini*, the parties' oral stipulation was recorded in the hearing transcript but "the stipulation was not made the subject of a minute order." *Id.* at 187, 625 P.2d at 1175. Instead, the district court orally directed the parties to prepare and submit a written stipulation. *Id.* at 186, 625 P.2d at 1175. The stipulation in *Casentini* thus was not "by consent . . . entered in the minutes in the form of an order." DCR 16 (then numbered DCR 24). The opposite occurred here, where minutes exist and state: "COURT ORDERED, absolute DECREE OF DIVORCE is GRANTED pursuant to the terms and conditions as outlined in the proposed Property Settlement Agreement, marked and admitted as Exhibit A, and lodged in the left hand side of the file."

This case is closer to *Grenz v. Grenz*, 78 Nev. 394, 374 P.2d 891 (1962), than *Casentini*. In *Grenz*, this court upheld a district court order enforcing a settlement agreement in a divorce matter as compliant with DCR 24, the predecessor to DCR 16. *Grenz*, 78 Nev. at 399, 374 P.2d at 894. The district judge summarized what he understood the agreement to be on the record, and it "was entered in the minutes with no objection." *Id.* "No correction was made by either party as directed by the court in the event the trial judge did not state the agreement accurately." *Id.* We concluded, "[a]n implied consent that the agreement be entered in the minutes was apparent." *Id.*

2.

Michael next argues that no contract was formed and that, if one was, it was unconscionable and should not be enforced. Whether the parties have "described their 'essential obligations' in [sufficiently] definite and certain terms" to create an enforceable contract presents a question of law that an appellate court reviews de novo. *Cogswell v. Citifinancial Mortg. Co., Inc.*, 624 F.3d 395, 398 (7th Cir. 2010). With this exception, whether a contract exists generally presents a question " 'of fact, requiring this court to defer to the district court's findings unless they are clearly erroneous or not based on substantial evidence.' " *Mack*, 125 Nev. at 95, 206 P.3d at 108 (quoting *May*, 121 Nev. at 672-73, 119 P.3d at 1257). Contract interpretation, by contrast, draws de novo review. *Id.*

To the extent Michael argues that the parties' announced intention of preparing a final written agreement defeats mutual assent to the PSA as immediately binding, his argument fails. "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agree-

ments are preliminary negotiations.'' Restatement (Second) of Contracts § 27 (1965); *see Dolge v. Masek*, 70 Nev. 314, 268 P.2d 919 (1954). Although Michael has since changed his position, his testimony and the statements of his lawyer at the hearing on the PSA expressed an assent to be currently bound. The clean copy to follow was just that: A clean execution copy, to be attached to the final decree. The district court did not clearly err when it enforced the PSA based on the transcript of the proceedings in open court.

Michael points to differences between the final PSA and the prove-up hearing version of it to establish the latter as preliminary and incomplete. To the extent the differences are due to the final version's incorporation of the handwritten changes noted at the prove-up hearing, this argument is a nonstarter. Michael does not identify any other changes of consequence. While he now argues that he disagreed with some of the terms as written, he testified without reservation at the prove-up hearing that he had reviewed and agreed with those terms. *Cf. Aldabe v. Adams*, 81 Nev. 280, 284-85, 402 P.2d 34, 36-37 (1965) (refusing to credit a sworn statement made in opposition to summary judgment that was in direct conflict with an earlier sworn statement of the same party), *overruled on other grounds by Siragusa v. Brown*, 114 Nev. 1384, 1393, 971 P.2d 801, 807 (1998). A district judge may relieve a party of a stipulation ''upon a showing that it was entered into through mistake, fraud, collusion, accident or some other ground of like nature,'' but this is a determination ''generally left to the discretion of the trial court.'' *Citicorp Services v. Lee*, 99 Nev. 511, 513, 665 P.2d 265, 266-67 (1983); *see* NRCP 59, 60(b) (specifying bases for relief from judgment). On the record presented, the district court did not abuse its discretion in declining to relieve Michael of his obligations under the PSA.

### III.

Michael's remaining claims of error fail. As for the attorney's lien appeal, *Argentena Consolidated Mining Co. v. Jolley Urga*, 125 Nev. 527, 539, 216 P.3d 779, 787 (2009), recognizes consent as a basis for the district court's exercise of ancillary jurisdiction over an attorney's lien. The record establishes a basis for implied consent.

We therefore affirm.

SAITTA and HARDESTY, JJ., concur.