132 Nev., Advance Opinion 34

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MARK ANDERSON,<br>Appellant,<br>vs.<br>SOPHIA SANCHEZ,<br>Respondent. | No. 62059<br><br>**FILED**<br><br>APR 2 8 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a district court divorce decree. Fifth Judicial District Court, Nye County; Kimberly A. Wanker, Judge.

*Affirmed.*

The Abrams & Mayo Law Firm and Vincent Mayo, Las Vegas, for Appellant.

Law Office of Daniel Marks and Daniel Marks and Christopher L. Marchand, Las Vegas, for Respondent.

BEFORE PARRAGUIRRE, C.J., HARDESTY, DOUGLAS, CHERRY, SAITTA, GIBBONS and PICKERING, JJ.

*OPINION*

PER CURIAM:

In this appeal, appellant seeks to set aside the parties' property settlement agreement incorporated into the divorce decree on the

16 - 13323

ground of mutual mistake and to join his sister as a third party to the action because she allegedly had an unresolved interest in certain real property, which was distributed as a community asset under the settlement agreement. We conclude that there was no mutual mistake because the parties were aware at the time they negotiated the settlement agreement of the facts supporting the sister's claim of interest in the property. Thus, appellant was not entitled to set aside the property settlement agreement and his request to join his sister in the action was properly denied. Accordingly, we affirm the divorce decree.

## BACKGROUND

In 2012, appellant Mark Anderson filed a complaint for divorce from respondent Sophia Sanchez. The parties agreed to mediation before a retired district court judge to discuss the distribution of their assets and debts. At issue were several pieces of real property, including a home located on East Wilson Avenue in Orange, California (Wilson property). Both parties were represented by independent legal counsel during the mediation, reached a settlement agreement resolving their issues, and signed a written Memorandum of Understanding (MOU) memorializing their agreement. As to the Wilson property specifically, the MOU stated that it was owned by the parties' trust and they agreed that the property would be awarded to Mark in exchange for a $75,000 payment to Sophia from Mark's retirement account, representing half of the property's net value. In the MOU, the parties acknowledged that they had carefully read the document, that it accurately reflected their

agreement, and that each voluntarily signed it without undue influence or coercion and agreed to be contractually bound by its terms. The parties initialed each page of the MOU and signed it at the end.

When Mark filed a notice stating his intent to withdraw and revoke his signature from the MOU, Sophia moved to enforce it, arguing that the settlement agreement was valid and the parties had agreed to be contractually bound by its terms. Mark, in turn, moved to set aside the MOU as unenforceable, citing NRCP 60(b), and arguing that his sister Cheryl Parr had an ownership interest in the Wilson property. Although acknowledging that he and Sophia held title, Mark alleged that they had a prior oral agreement with Cheryl, under which Cheryl transferred title to Mark and Sophia for the purpose of facilitating loans needed to renovate the residence. He further alleged that once the loans were paid off from rental income generated by the property, Mark and Sophia had agreed to transfer title back to Cheryl. Consequently, Mark argued that he and Sophia were merely holding title to the Wilson property for Cheryl's benefit under a resulting or constructive trust theory, and because the parties lacked authority to enter into an agreement affecting property owned by Cheryl, the MOU as to the Wilson property should be set aside as void. To support his position, Mark provided offers of proof including trust documents and affidavits or other statements indicating knowledge of this arrangement between the parties and Cheryl. Mark also requested to join Cheryl in the divorce action and amend the pleadings to reflect her ownership rights in the Wilson property. In response, Sophia argued that

she and Mark undisputedly held title to the Wilson property, the MOU was an enforceable settlement agreement, and Cheryl lacked standing to join the action.

After hearing argument, the district court ruled that the MOU was enforceable under Nevada law and denied the request to join Cheryl in the action.[1] On the record, the court observed that Mark and Sophia were legal owners of the property and any circumstances creating a constructive trust in Cheryl's favor were known to them. The court entered the divorce decree, which adopted the parties' MOU and ordered the property to be divided in accordance with their agreement.

Mark filed this appeal from the decree, and we transferred the case to the court of appeals. That court reversed and remanded as to the disposition of the Wilson property, concluding that the district court should have conducted an evidentiary hearing to decide the joinder issue before adjudicating the parties' property pursuant to the settlement agreement. We granted Sophia's petition for review and withdrew the court of appeals' opinion.

## DISCUSSION

The present dispute requires us to examine the creation and enforceability of the parties' property settlement agreement. Mark contends that the district court should have set aside the MOU based on the parties' mutual mistake that the Wilson property was community

---

[1]Cheryl also moved to intervene below, but the district court denied her motion and she was never made a party to the action. Thus, Cheryl is not a party to this appeal. She did not file a separate writ petition challenging the decision on intervention.

property subject to division. He argues that both he and Sophia shared a misconception during negotiations that title to the Wilson property in their name supplanted Cheryl's ownership interest and they were unaware of how a resulting or constructive trust in Cheryl's favor could affect their rights in, and authority to, dispose of the Wilson property.

An agreement to settle pending divorce litigation constitutes a contract and is governed by the general principles of contract law. *Grisham v. Grisham*, 128 Nev., Adv. Op. 60, 289 P.3d 230, 234 (2012); *see also* DCR 16 (requiring an agreement or stipulation between the parties to be in writing or entered into the minutes in the form of an order). Contract interpretation generally presents a question of law subject to de novo review. *Grisham*, 128 Nev., Adv. Op. 60, 289 P.3d at 236. Whether a contract exists is a question of fact, however, and this court will defer to the district court unless the factual findings are clearly erroneous or not supported by substantial evidence. *Id.*

An enforceable contract requires "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). A mutual mistake may be grounds to equitably rescind a contract or to render a contract void. *Tarrant v. Monson*, 96 Nev. 844, 845, 619 P.2d 1210, 1211 (1980). "Mutual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain." *Gen. Motors v. Jackson*, 111 Nev. 1026, 1032, 900 P.2d 345, 349 (1995).

We conclude that Mark's argument regarding mutual mistake is unavailing. It was undisputed that Mark and Sophia held title to the

Wilson property through a trust at the time they entered into the MOU. Holding title constitutes "'the legal right to control and dispose of property.'" *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 298, 183 P.3d 895, 902 (2008) (quoting *Title, Black's Law Dictionary* (8th ed. 2004)). It was also undisputed that the parties were aware of the facts supporting Cheryl's purported interest in the Wilson property when they entered into the MOU. Indeed, Mark represented in his motion to set aside that the parties had always known the Wilson property belonged to Cheryl and he attached offers of proof to support that position. Thus, the parties' had no shared misconception of a vital fact concerning the Wilson property. *See Gen. Motors*, 111 Nev. at 1032, 900 P.2d at 349.

Despite his knowledge, Mark did not include in his pleadings any allegations as to Cheryl's interest, and he ultimately signed the MOU reflecting that he and Sophia were the sole holders of title to the Wilson property and agreeing to a specific division between them. Both parties were represented by independent legal counsel and engaged in the negotiations before a retired district court judge before signing the written MOU and each declared that they were "of sound mind and mental capacity to understand the nature and affect of [the] agreement." Both parties acknowledged that the MOU "represents what each believes to be a fair and reasonable resolution of the issues, and each agrees to be contractually bound by its terms."

Even assuming, as Mark now argues, that the parties were unaware or misinformed of the legal effect Cheryl's purported interest had on their disposition of the Wilson property, mutual mistake is not grounds for rescission when the party bears the risk of mistake. *Land Baron Inv., Inc. v. Bonnie Springs Family LP*, 131 Nev., Adv. Op. 69, 356 P.3d 511,

517 (2015). More specifically, "[i]f the party is aware at the time he enters into the contract 'that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient,'" the court will allocate the risk of mistake to that party. *Id.* (quoting Restatement (Second) of Contracts § 154 cmt. b (Am. Law Inst. 1981)); *see* Restatement (Second) of Contracts § 151(b) (observing that the law in effect at the time of the contract is "part of the total state of facts"). If Mark did not have sufficient knowledge of the legal consequences of any oral agreement with Cheryl, he was aware of the facts underlying his claim that the Wilson property was the subject of an equitable trust and therefore not appropriate for distribution under the MOU, and he could have pursued the issue further rather than agreeing to the settlement. *See* Restatement (Second) of Contracts § 154(c) (indicating that the court may allocate the risk of mistake to a party when it is reasonable under the circumstances); *cf. Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008) (holding that a mutual mistake of law was not grounds to rescind a property settlement agreement particularly where both parties were represented by counsel during the negotiations and were on equal footing to know or learn of the relevant law). Thus, Mark bore the risk of mistake when he entered into the MOU despite being aware of his limited knowledge. Accordingly, the district court's decision to enforce the MOU is supported by substantial evidence. *Grisham*, 128 Nev., Adv. Op. 60, 289 P.3d at 236.

Finally, because we conclude that the MOU was enforceable with respect to the parties' disposition of the Wilson property, Mark's request to join Cheryl in the action for the purpose of adjudicating any interest she may have in the property was properly denied. For the reasons set forth herein, the district court's divorce decree is affirmed.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A