OPINION
 

 By the Court, Hardesty, J. :
 

 In this case, all parties agreed to the essential terms of a release in reaching a global settlement, but three parties later refused to execute the release document. We therefore consider whether the essential terms of a release are a material part of a settlement agreement, without which the settlement agreement is never formed, or whether the release’s terms are inconsequential in determining whether the parties have reached a settlement agreement. We conclude that the release’s essential terms are material and therefore required for an enforceable settlement agreement to exist. However, what is an essential release term necessarily varies with the nature and complexity of the case. Because a settlement contract is formed when the parties have agreed to its material terms, even though the exact language is finalized later, a party’s refusal to later execute a release document after agreeing upon the release’s essential terms does not render the settlement agreement invalid.
 

 FACTS
 

 On January 21, 2001, respondent Curtis Clint Anderson (Curtis) was driving a vehicle owned by his parents, respondents Darlene and Curtis L. Anderson (the Andersons), when he lost control, causing a rollover accident. Sebora Marie May, Angela Baffa, Peter Budahl, and Shemeela Sherow were passengers in the car. All of the passengers sustained injuries; Sebora Marie May’s were fatal.
 

 The Andersons were insured by California Casualty Indemnity Exchange (CCIE). Their policy covered liability for injuries up to $100,000 per person and $300,000 per occurrence.
 

 All parties hired separate counsel shortly after the accident. Gilda and Wade May, individually, and Wade May as special administrator for the estate of Sebora Marie May (the Mays), hired attorney Ralph Schwartz. With the Mays’ consent, Schwartz commenced negotiations for a global settlement of all the claims against Curtis and the Andersons arising out of the accident. CCIE
 
 *671
 
 offered to pay the full policy limit of $300,000 to the injured parties in exchange for a general release of all claims and a covenant not to sue. Schwartz agreed.
 

 On September 5, 2001, Schwartz faxed a letter to the other parties’ counsel, stating:
 

 It is my understanding that we have reached an equitable division of Curtis Anderson’s policy limits as follows:
 

 Sebora Marie May $100,000.00
 

 Peter Budahl $100,000.00
 

 Angela Baffa $ 72,500.00
 

 Shemeela Sherow $ 27,500.00
 

 If the above distribution of settlement funds is acceptable, please sign below and return via fax to my office as soon as possible so that I may submit it to [the Andersons’ attorney].
 

 The other attorneys signed and returned the letter to Schwartz. Schwartz then faxed the signed letters to Curtis’ and the Ander-sons’ attorney. On one of the fax cover sheets, Schwartz wrote that he had attached the parties’ consents to the distribution of the policy limits, and he requested that the Andersons’ attorney immediately forward the release and settlement drafts.
 

 The Andersons’ attorney then sent letters to Peter’s, Angela’s and Shemeela’s attorneys, along with Schwartz, confirming the settlement amount and including a full, final, and general release of all claims. Peter, Angela and Shemeela executed the documents and received payment from CCIE.
 

 The Mays, however, refused to execute the documents or accept payment. The form of the general release was unacceptable to them because: (1) it did not contain an admission of liability by Curtis, and (2) it extinguished all claims and rights against Curtis and all persons who might have culpability or liability for the accident. Wade May acknowledged that he had authorized Schwartz to negotiate a settlement with the Andersons but never agreed to release Curtis, in part, because he felt such a release could jeopardize any possibility of convincing the police to prosecute Curtis for his daughter’s death.
 

 Unable to resolve the disagreement over the release document’s final language, the Mays filed an action in district court against Curtis and the Andersons, alleging wrongful death and negligence. Curtis and the Andersons answered, asserting that the claim was settled and seeking specific performance of the settlement agreement. Additionally, CCIE, relying on the settlement agreement, in-terpleaded the balance of the insurance proceeds.
 

 Following a bench trial, the district court found that Schwartz had authority to bind the Mays and that CCIE had offered to settle the claims by paying the full insurance proceeds for a general
 
 *672
 
 release of all claims and a covenant not to sue. Additionally, the district court determined that the execution of a release document was not necessary to enforce an otherwise valid settlement agreement. Consequently, the district court determined that the parties had entered into a legally enforceable settlement agreement providing for a general release of all claims and entered judgment in accordance with the proposed settlement. The Mays appeal.
 

 DISCUSSION
 

 Whether the essential terms of a release constitute a material term of a settlement agreement is a matter of first impression in Nevada.
 

 Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law.
 
 [1]
 
 Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration.
 
 [2]
 
 With respect to contract formation, preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms.
 
 [3]
 
 A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite.
 
 [4]
 
 A contract can be formed, however, when the parties have agreed to the material terms, even though the contract’s exact language is not finalized until later.
 
 [5]
 
 In the case of a settlement agreement, a court cannot compel compliance when material terms remain uncertain.
 
 [6]
 
 The court must be able to ascertain what is required of the respective parties.
 
 [7]
 

 Contract interpretation is subject to a de novo standard of review.
 
 [8]
 
 However, the question of whether a contract exists is one of fact, requiring this court to defer to the district court’s findings un
 
 *673
 
 less they are clearly erroneous or not based on substantial evidence.
 
 [9]
 

 There is little doubt that release terms are generally thought to be material to any settlement agreement.
 
 [10]
 
 The majority of courts have held that the essential terms of a release are necessary to a settlement agreement’s formation and that the parties have not reached a settlement when the release terms are still in dispute.
 
 [11]
 
 However, what is considered an “essential term” of a release varies with the nature and complexity of the case and must, therefore, be determined on a case-by-case basis.
 
 [12]
 

 In a Florida case,
 
 Nichols v. Hartford Insurance Co. of the
 
 Midwest,
 
 [13]
 
 the parties agreed that there would be a release but failed to discuss whether it would include indemnification language. The court stated, “ ‘Where the language of a release is disputed and the parties fail to reach an agreement as to the character, nature, or type of release to be used, an essential element of the agreement is not established.’ ”
 
 [14]
 
 The court went on to recognize that not all of the details of the release need to be absolutely decided so long as the parties agree upon the essential terms; in that case, the indemnification language constituted an essential term.
 
 [15]
 

 Likewise, in
 
 Bontigao v. Villanova
 
 University,
 
 [16]
 
 the court determined that a settlement agreement was not enforceable, even though the parties had agreed upon the settlement amount and negotiated over many of its terms, because the scope of the release remained an unresolved material term.
 
 [17]
 

 We agree with the
 
 Nichols
 
 and
 
 Bontigao
 
 courts that an enforceable settlement agreement cannot exist when the parties have not
 
 *674
 
 agreed to the essential terms of the release because these provisions constitute a material term of the settlement contract. Release terms are not a mere formality. They are an important reason why a party enters into a settlement agreement. If the prevention of future litigation is one of the primary goals of a settlement, the essential terms of the release needed to achieve that goal are material to the settlement agreement.
 

 Although some courts have stated that the terms of a release are inconsequential in determining whether the parties have reached an agreement, these cases are either distinguishable from the instant case or treat a release as a mere formality. For example, in
 
 Earnest & Stewart, Inc.
 
 v. Codina,
 
 [18]
 
 a case involving offers of judgment, the court held that “the dismissal and releases referred to in the offer [of judgment] were not ‘conditions’ of the settlement, but rather mechanical and legally inconsequential means of effecting it. They thus should be regarded as mere surplusage, the existence of which should not affect substantial rights.”
 
 [19]
 

 Earnest
 
 is not analogous to this case. Unlike the effect of the pre-litigation settlement agreement here, once a case has been filed in court, the bar to re-litigating that case after an offer of judgment has been accepted does not depend on the terms of a release but rather on the claim preclusion effect of res judicata.
 
 [20]
 

 Here, the parties agreed upon the essential terms of the release. The district court found that CCIE made an offer to pay the full policy proceeds in exchange for a general release of
 
 all
 
 claims and a covenant not to sue. Schwartz had authority to negotiate on behalf of the Mays and accepted the offer in writing. The finalized release document prohibiting the Mays from pursuing any action, not just against the Andersons, but also against Curtis and all other parties who could be liable for the tragic accident, merely reiterates the release terms of the accepted settlement agreement.
 
 [21]
 
 Regardless of the release document’s language, however, since the parties agreed upon the essential terms of the release,
 
 i.e.,
 
 all claims, an enforceable settlement agreement exists. The fact that
 
 *675
 
 the Mays refused to sign the proposed draft release document is inconsequential to the enforcement of the documented settlement agreement.
 
 [22]
 
 The district court was able to determine what was required of the respective parties under the release terms of the settlement agreement and properly compelled compliance by dismissing the Mays’ action. Accordingly, we affirm the district court’s judgment.
 

 Rose and Gibbons, JJ., concur.
 

 [1]
 

 Reichelt
 
 v.
 
 Urban Inv. & Dev. Co.,
 
 611 F. Supp. 952, 954 (N.D. Ill. 1985).
 

 [2]
 

 Keddie v. Beneficial Insurance, Inc.,
 
 94 Nev. 418, 421, 580 P.2d 955, 956 (1978) (Batjer, C. J., concurring).
 

 [3]
 

 M
 
 & D Balloons, Inc. v. Courtaulds, PLC,
 
 No. 90-C-834, 1990 WL 186077, *3 (N.D. Ill. Nov. 21, 1990).
 

 [4]
 

 Matter of the Estate of Kern,
 
 107 Nev. 988, 991, 823 P.2d 275, 277 (1991);
 
 Richards v. Oliver,
 
 328 P.2d 544, 552 (Cal. Dist. Ct. App. 1958).
 

 [5]
 

 Higbee
 
 v.
 
 Sentry Ins. Co.,
 
 253 F.3d 994, 998 (7th Cir. 2001).
 

 [6]
 

 Chappell v. Roth,
 
 548 S.E.2d 499, 500 (N.C. 2001).
 

 [7]
 

 Richards,
 
 328 P.2d at 552.
 

 [8]
 

 Diaz v. Ferne,
 
 120 Nev. 70, 73, 84 P.3d 664, 665-66 (2004);
 
 Grand Hotel Gift Shop
 
 v.
 
 Granite St. Ins.,
 
 108 Nev. 811, 815, 839 P.2d 599, 602 (1992).
 

 [9]
 

 James Hardie Gypsum, Inc. v. Inquipco,
 
 112 Nev. 1397, 1401, 929 P.2d 903, 906 (1996),
 
 overruled on other grounds by Sandy Valley Assocs.
 
 v.
 
 Sky Ranch Estates,
 
 117 Nev. 948, 955 n.6, 35 P.3d 964, 968-69 n.6 (2001).
 

 [10]
 

 See Inamed Corp.
 
 v.
 
 Kuzmak,
 
 275 F. Supp. 2d 1100, 1125 (C.D. Cal. 2002).
 

 [11]
 

 Cheverie
 
 v.
 
 Geisser,
 
 783 So. 2d 1115, 1119 (Fla. Dist. Ct. App. 2001);
 
 Kohn v. Jaymar-Ruby, Inc., 28
 
 Cal. Rptr. 2d 780 (Ct. App. 1994);
 
 Doi v. Halekulani Corp.,
 
 276 F.3d 1131, 1138 (9th Cir. 2002);
 
 Abbott Laboratories v. Alpha Therapeutic Corp.,
 
 164 F.3d 385, 388 (7th Cir. 1999);
 
 Bontigao
 
 v.
 
 Villanova University,
 
 786 F. Supp. 513, 515-16 (E.D. Pa. 1992).
 

 [12]
 

 See Giovo v. McDonald,
 
 791 So. 2d 38, 40 (Fla. Dist. Ct. App. 2001).
 

 [13]
 

 834 So. 2d 217, 218-19 (Fla. Dist. Ct. App. 2002).
 

 [14]
 

 Id.
 
 at 220 (quoting
 
 Cheverie,
 
 783 So. 2d at 1119).
 

 [15]
 

 Id.
 
 at 219.
 

 [16]
 

 786 F. Supp. 513 (E.D. Pa. 1992).
 

 [17]
 

 Id.
 
 at 515-16.
 

 [18]
 

 732 So. 2d 364 (Fla. Dist. Ct. App. 1999).
 

 [19]
 

 Id.
 
 at 366.
 

 [20]
 

 See Willerton v. Bassham,
 
 111 Nev. 10, 17-18, 889 P.2d 823, 827-28 (1995);
 
 In re Connaught Properties, Inc.,
 
 176 B.R. 678 (Bankr. D. Conn. 1995);
 
 Bayou Fleet, Inc.
 
 v.
 
 Alexander,
 
 234 F.3d 852 (5th Cir. 2000);
 
 Ghiringhelli v. Riboni,
 
 213 P.2d 17 (Cal. Dist. Ct. App. 1950);
 
 Wheeler
 
 v.
 
 Trefftzs,
 
 39 Cal. Rptr. 507 (Ct. App. 1964).
 

 [21]
 

 See, e.g., Russ
 
 v.
 
 General Motors Corp.,
 
 111 Nev. 1431, 1435-39, 906 P.2d 718, 720-23 (1995).
 

 [22]
 

 Hagrish
 
 v.
 
 Olson,
 
 603 A.2d 108, 110 (N.J. Super. Ct. App. Div. 1992).