**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER A. JONES,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>E. K. MCDANIEL; MARK DRAIN;<br>JACKIE CRAWFORD,<br>*Defendants-Appellees*. | No. 10-16658<br><br>D.C. No.<br>3:05-cv-00278-<br>RAM<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert A. McQuaid, Magistrate Judge, Presiding

Argued and Submitted
April 12, 2013—Pasadena, California

Filed June 10, 2013

Before: Marsha S. Berzon and Richard C. Tallman, Circuit
Judges, and Lee. H. Rosenthal, District Judge.[*]

Opinion by Judge Berzon

---

[*] The Honorable Lee H. Rosenthal, District Judge for the U.S. District
Court for the Southern District of Texas, sitting by designation.

## SUMMARY[**]

### Prisoner Civil Rights

The panel dismissed a prisoner's civil rights appeal after finding that it was rendered moot by the parties' post-trial settlement agreement.

Following a jury trial on damages on plaintiff's due process claim, the parties entered into a settlement agreement, according to which plaintiff received $11,000 plus costs and attorneys' fees, as well as expungement of the record of a disciplinary violation, in full satisfaction of the judgment. Plaintiff then filed this appeal arguing that the district court's post-trial "Judgment in a Civil Case" did not encompass the district court's earlier summary judgment order pertaining to plaintiff's First Amendment claims. The panel held that the district court's summary judgment on the First Amendment claim merged with the district court's final judgment and was therefore subject to the parties' Accord and Satisfaction which resolved all facets of their dispute.

## COUNSEL

Bradley Walters (argued) and Jorge Nicolas Anwandter (argued), Law Students, under the supervision of Erwin Chemerinsky, Peter Afrasiabi, and Kathryn Davis, University of California, Irvine, School of Law, Appellate Litigation Clinic, Irvine, California, for Plaintiff-Appellant.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Clark G. Leslie (argued), Senior Deputy Attorney General, and Catherine Cortez Masto, Attorney General, Carson City, Nevada, for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

While incarcerated in Ely State Prison in Ely, Nevada, Christopher Jones wrote a letter to his fellow inmates, calling on them to work together in support of his class action lawsuit against prison administrators. Later, prison officials discovered the letter in Jones' cell and disciplined him for violating a prison regulation that prohibited encouraging disruption.

Jones filed suit pursuant to 42 U.S.C. § 1983 against Warden E.K. McDaniel, Corrections Officer Mark Drain, and Nevada Department of Corrections ("NDOC") Director Jackie Crawford (collectively, "defendants"), alleging violations of his First and Fourteenth Amendment rights. The district court granted Jones summary judgment on the due process claim, but granted defendants summary judgment as to the First Amendment claims. Following a jury trial on damages in which Jones was awarded both nominal and punitive damages, the parties entered into a settlement agreement, according to which Jones received $11,000 plus costs and attorney's fees, as well as expungement of the record of the violation, "in full satisfaction of the judgment entered herein." Jones then filed this appeal seeking review of the district court's adverse partial summary judgment order regarding his First Amendment claims.

The question in this case is whether Jones' appeal may go forward or whether it was rendered moot by the parties' settlement agreement.  We hold the latter and dismiss the appeal.

## I.  Background

### A.  The Letter

In September 1999, Jones drafted a letter to his fellow inmates, calling on them to "work togather [sic] and try and tie this system in knots, by using the legal system and the administrative grievence [sic] process to open the door for [a] class action I am working on."  By "working together for our common good," Jones wrote, the inmates "[would] have a loud voice" to "direct [their] distrust, dissatisfaction, rage and intelligence in one direction (at the system) instead of at each other."  Jones concluded by telling inmates to "read this[,] and if you agree[,] just write your cell [number] on the back and pass it to the next cell and I'll get back to you with the next step."  Jones did not circulate the letter broadly; he may, however, have shown it to a few other inmates.

In September 2000, NDOC Corrections Officer Michael Nustad searched Jones' cell as part of an unrelated prison-wide search.  According to Jones, Officer Nustad was aware that Jones previously had filed § 1983 actions against several other corrections officers.  Jones states that during the search of his cell, he heard Officer Nustad tell another corrections officer, "this is the case I was telling you about against the Sarg, Rob and Grant.  This is that assh–e."  At some point during the search, Officer Nustad discovered the letter.

**B. Disciplinary Proceedings**

The following day, Officer Nustad wrote up charges against Jones for violating Code of Penal Discipline Section MJ-28, which prohibits prisoners from "[o]rganizing, encouraging or participating in a work stoppage or other disruptive demonstration or practice."  The charging document characterizes the letter as an "attempt to organize and disrupt," citing language from the letter calling on inmates to "[tie] the system in knots" and "direct . . . distrust, dissatisfaction, rage and intelligence . . . at the system."

Corrections Officer Mark Drain served as the Hearing Officer at Jones' subsequent disciplinary hearing on the MJ-28 charge.  At the hearing, Officer Drain refused Jones' request for a copy of the letter to review prior to or during the proceedings.  When Jones repeatedly asked for the letter to be produced, Officer Drain removed him for "disrupting the hearing."  Officer Drain then determined that Jones had violated MJ-28, and issued sanctions of 180 days in disciplinary segregation, 90 days loss of phone privileges, and forfeiture of the letter.

Jones appealed Officer Drain's determination to Warden McDaniel, contending that the letter should have been presented at the hearing, and that it was protected under the First Amendment.  Warden McDaniel upheld the finding and sanctions.  Having exhausted his appeals within the prison system, Jones served the entirety of his disciplinary sanctions.

## C.  Jones' § 1983 Suit

### 1.  Partial Summary Judgment Orders

Pursuant to 42 U.S.C. § 1983, Jones filed an amended complaint against Officer Drain, Warden McDaniel, and NDOC Director Crawford.  Jones asserted three causes of action: (1) violation of his procedural due process rights stemming from Officer Drain's refusal to produce the letter at the disciplinary hearing; (2) violation of his First Amendment rights and retaliation based on the exercise of his right to free speech; and (3) violations of the First, Fifth, and Fourteenth Amendments by Warden McDaniel and Crawford based on their failure to supervise their subordinates.  Jones requested declaratory and injunctive relief, as well as compensatory and punitive damages in excess of $10,000.

Magistrate Judge Robert McQuaid, Jr. issued a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment recommending that the court: (1) grant Jones' request for summary judgment as to the due process claim; (2) grant defendants' request for summary judgment as to the First Amendment and retaliation claims; and (3) grant Jones' request for summary judgment on his failure to supervise claim against Warden McDaniel, but deny Jones' request for the same claim as to Crawford.  The district court later issued an order accepting the R&R.

### 2.  The Trial

Upon the district court's finding that Officer Drain and Warden McDaniel violated Jones' due process rights, the parties "proceed[ed] to trial solely on the issue of Mr. Jones'

damages."[1] Magistrate Judge McQuaid, the same judge who issued the R&R, presided over the trial. As in his amended complaint, Jones sought nominal and punitive damages,[2] as well as injunctive and declaratory relief. At trial, Jones argued that his disciplinary sanctions, particularly his placement in disciplinary segregation, constituted an exaggerated response to the uncirculated letter, thereby entitling him to punitive damages.

The jury agreed and awarded Jones $2 in nominal damages ($1 each for Officer Drain's violation and Warden McDaniel's violation) and $11,000 in punitive damages. That same day, the district court issued its "Judgement in a Civil Case," which ordered that Jones recover $11,002 from defendants.

### 3. The Settlement

Following the district court's entry of judgment in this case, the parties filed various post-judgment motions. Magistrate Judge McQuaid then held a "Status Conference" to resolve the post-judgment motions.[3] At the conference, defendants agreed to pay Jones a total of $34,825.16, which included Jones' damages award of $11,000[4] plus attorney's fees and costs. Defendants also agreed to expunge the

---

[1] The parties "agreed to waive Jackie Crawford's liability."

[2] A pretrial ruling precluded compensatory damages.

[3] Jones attended the meeting by telephone; his attorney attended in person along with defendants' counsel.

[4] Jones agreed at the conference to forego the $2 in nominal damages awarded.

official records of Jones' MJ-28 violation and subsequent discipline. Judge McQuaid then stated to Jones, "[i]n exchange for that . . . you will execute a release of all claims, releasing the defendants from all claims arising out of this lawsuit." Jones' attorney responded that "since the case was decided on the merits," the term "release[]" may not be appropriate. Judge McQuaid agreed, and indicated that the agreement instead would be designated a "satisfaction of judgment," meaning that "the defendants paid the judgment and it's satisfied." At that point, Judge McQuaid asked Jones, "[n]ow, you agree to that settlement, Mr. Jones?" to which Jones responded, "[y]es, I do, Your Honor." The parties then stipulated to withdraw all post-trial motions, and Judge McQuaid concluded: "[t]hen it's done. It's all done. . . . Just a Satisfaction of Judgment, that's the last document in the file and then the file will be closed."

The parties thereupon executed an "Accord and Satisfaction," providing that the defendants agreed to pay Jones a total of $11,800 plus $23,025.16 in attorney's fees, and to remove all record of the disciplinary charge. The document then states that "Jones, by and through his attorney . . . hereby acknowledge[s] receipt of payment . . . in full satisfaction of the judgment entered herein and the accord regarding post judgment disputes raised by the parties."

## 4. The Appeal

Two days after executing the Accord and Satisfaction, Jones filed a pro se Notice of Appeal of the district court's order adopting the R&R. Defendants moved to dismiss the appeal on the grounds that the Accord and Satisfaction resolved all of Jones' claims against them. Alternatively, defendants' motion sought an indicative ruling from the

district court pursuant to Federal Rule of Appellate Procedure 12.1 as to the scope of the Accord and Satisfaction. A motions panel of this court denied the motion "without prejudice to refiling if the district court issues an indicative ruling."

Defendants thereupon filed a "Motion for Indicative Ruling" in the district court, seeking the court's views as to the scope of the Accord and Satisfaction. The district court denied the motion because "there [were] not any outstanding motions pending before [that] court on which to rule," but stated that, insofar as

> the Court of Appeals was seeking this court's opinion as to the scope of the settlement reached on June 29, 2010, it was [this court's] opinion that the case was fully and finally settled on that date with no issues remaining and that the case would be closed following the filing of the Satisfaction of Judgment.

Based on the district court's order, defendants renewed their motion to dismiss the appeal. We denied the renewed motion, and subsequently ordered the appointment of pro bono counsel to represent Jones on appeal.

## II. Discussion

### A. Settlement & Mootness

We begin with some general observations regarding the effect of a prior settlement on a case pending on appeal. "Generally, when a party settles all of his personal claims before appeal, an appeals court must dismiss the appeal as

moot." *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009). That is because there is no "live case or controversy" where "the parties' settlement agreement has resolved all facets of their dispute." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1131–32 (9th Cir. 2005) (en banc). Thus, we have held, where a plaintiff "enter[s] into a settlement agreement in which she agree[s] to relinquish 'any claims,'" against a defendant, a subsequent appeal of such a claim is moot. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 556–57 (9th Cir. 2010).

The question in this case, then, is whether the parties' Accord and Satisfaction "resolved all facets of their dispute," including Jones' First Amendment claims, thereby rendering this appeal moot. *Gator.com Corp.*, 398 F.3d at 1132; *see also* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.2, at 785 (3d ed. 2008) (noting that a settlement moots only the issues the parties intended to settle). According to Jones, the Accord and Satisfaction is limited to the judgment entered on his due process claim, and "has nothing to do with the First Amendment claim[s]." Defendants disagree, urging that the parties intended "to settle the entire litigation" at the June 29, 2010 Status Conference.

As a general matter, "'[t]he construction and enforcement of settlement agreements are governed by principles of local law.'" *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (quoting *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). That is true "even where a federal cause of action is settled or released." *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) (internal quotation marks and citations omitted).

Under Nevada law, "a settlement agreement['s] construction and enforcement are governed by principles of contract law." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). The "ultimate goal is to effectuate the contracting parties' intent." *In re Amerco Derivative Litig.*, 252 P.3d 681, 693 (Nev. 2011). Although any analysis of a settlement's terms starts with the language of the agreement, "when that intent is not clearly expressed in the contractual language, [courts] may also consider the circumstances surrounding the agreement." *Id.*

## B. The Accord & Satisfaction

We turn now to the settlement agreement at issue in this case. Pursuant to the Accord and Satisfaction, the parties agreed to withdraw all post-trial motions. Defendants also agreed to pay Jones $11,000 in punitive damages, plus costs and attorney's fees, and to expunge all records of the disciplinary charge. For his part, Jones gave up the nominal damages and acknowledged receipt of the agreed-upon payment "in full satisfaction of the judgment entered herein."

There is only one judgment to which the statement "the judgment entered herein" could possibly refer: the "Judgment in a Civil Action" entered by the district court on March 31, 2010. On its face, that judgment makes no mention of Jones' individual causes of action. It simply states that "[t]he court has ordered that . . . Jones[] recover from [Officer Drain] $1.00 in nominal damages, and $4,000.00 in punitive damages, and that [Jones] recover from [Warden McDaniel] $1.00 in nominal damages, and $7,000.00 in punitive damages."

Jones maintains that because the "Judgement in a Civil Action" does not mention his First Amendment claims, it does not encompass the district court's earlier partial summary judgment order as to those claims. Thus, he argues, the Accord and Satisfaction also does not cover those claims.

Not so. Orders granting partial summary judgment "are not final appealable orders." *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074 (9th Cir. 1994) (internal quotation marks omitted). "As a result, parties ordinarily must obtain Rule 54(b) certification in order to appeal partial summary judgments." *Id.*; *see* Fed. R. Civ. P. 54(b). Absent such certification, "[a] ruling on a motion for partial summary judgment merges with the final judgment." *Adkins v. Mireles*, 526 F.3d 531, 538 (9th Cir. 2008); *see also* 15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3914.28 (2d ed. 1991 & 2008 Supp.).

Jones did not seek Rule 54(b) certification of the district court's order granting defendants summary judgment on the First Amendment claims. Accordingly, that order merged with the district court's final judgment, *i.e.*, the "Judgment in a Civil Case." Ordinarily, a partial summary judgment order that has merged with the final judgment "is reviewable on appeal from the final judgment." *Adkins*, 526 F.3d at 538. Here, however, the parties executed an agreement "in full satisfaction" of the final judgment. By its plain terms, then, the Accord and Satisfaction encompasses the district court's prior summary judgment ruling on Jones' First Amendment claims.

Moreover, at no point did Jones attempt to reserve his right to appeal or otherwise exclude his First Amendment

claims from the agreement. We can find no authority (and Jones cites none) supporting Jones' claim that his right to appeal the First Amendment claims was automatically preserved. To the contrary, we have held in related contexts that "[i]n general, a party cannot appeal a judgment entered with its consent" unless it "specifically preserves its right to appeal." *Slaven v. Am. Trading Transp. Co.*, 146 F.3d 1066, 1070 (9th Cir. 1998). In executing the Accord and Satisfaction, Jones essentially consented to the "full satisfaction of the judgment entered herein," which, as noted, included the court's prior ruling on Jones' First Amendment claims.

The circumstances surrounding the execution of the Accord and Satisfaction confirm the parties' intent to settle all of Jones' claims. At the June 29, 2010 Settlement Conference, Judge McQuaid explained to Jones that, under the terms of the agreement, Jones "will execute a release of all claims, releasing defendants from *all claims* arising out of this lawsuit." At the parties' request, Judge McQuaid indicated that the agreement would be designated a "satisfaction of judgment" instead of a "release," meaning that "the defendants paid the judgment and it's satisfied." Judge McQuaid then asked Jones, "[n]ow, you agree to that settlement, Mr. Jones?" to which Jones responded, "[y]es, I do, Your Honor."

Although Judge McQuaid's statement that Jones would release "all [of the] claims arising out of this lawsuit" was not memorialized in the Accord and Satisfaction, that does not mean Jones may escape the legal consequences of his assent. Under Nevada law, a contract may be formed "when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *May*,

121 Nev. at 672. What matters, therefore, is that parties *intended* to resolve the entire dispute at the settlement conference, and so indicated orally. Nothing in the written document is inconsistent with that intent.

In light of that intent, Jones' reliance on the "usual rule in the federal courts . . . that payment of a judgment does not foreclose an appeal," *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005), is misplaced. *See also Stanton Rd. Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1020 (9th Cir. 1993) ("The fact that payments have been made in satisfaction of a money judgment does not foreclose an appeal."). As we noted in *Milicevic*, that general rule does not apply where, as here, "there is some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment." *Milicevic*, 402 F.3d at 915. The Nevada Supreme Court similarly recognizes that satisfaction of a judgment "waives the right to appeal or renders the matter moot when the payment is intended to compromise or settle the matter." *Wheeler Springs Plaza, LLC v. Beemon*, 119 Nev. 260, 265 (2003). That plainly is the case here.

Finally, it makes sense that Jones would have agreed to resolve the entire dispute with defendants, so as to preclude an appeal by the defendants. Jones initially sought in his amended complaint "damages in excess of $10,000." Under the terms of the Accord and Satisfaction, that is precisely what he received. That $11,000 punitive damages award, moreover, represented a penalty against defendants for taking disciplinary action against Jones following discovery of the letter—namely, placing him in disciplinary segregation. Although that damages award would not, by itself, preclude Jones from seeking nominal damages for the alleged First Amendment violations, it is unlikely that Jones would be

entitled to additional damages for the disciplinary sanctions. *See, e.g.*, *Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010) (holding that "[a] plaintiff may not recover damages twice for the same injury simply because he or she has two legal theories" (internal quotation marks omitted)).

Further, defendants had already returned the letter to Jones, and they agreed in the Accord and Satisfaction to remove all records pertaining to the MJ-28 disciplinary charges. In fact, much of the discussion at the June 2010 Status Conference centered on whether and how defendants would expunge Jones' disciplinary record. The expungement was not part of the jury award; rather, it was relief bargained for at the Status Conference. By agreeing to relinquish his remaining claims against defendants in exchange for that benefit, Jones obtained a remedy responsive to his First Amendment concerns and not obtained in the course of litigating the due process issue. Having received that relief, it is difficult to see what further injunctive relief Jones could have obtained were he permitted to proceed with his First Amendment claims.

In short, given that Jones had obtained $11,000 in damages, return of the letter, and expungement of the violation and disciplinary sanctions, it is unsurprising that he agreed to release his remaining claims against defendants and did not seek to exclude his First Amendment claims from the agreement.

Finally, we note that there is little reason to remand Jones' case to the district court for a determination as to the scope of the settlement agreement. The district court has already weighed in on the matter, stating its "opinion that the

case was fully and finally settled on [June 29, 2010] with no issues remaining." We agree and, accordingly, dismiss Jones' appeal as moot. *See Gator.com Corp.*, 398 F.3d at 1132.

**DISMISSED.**