130 Nev., Advance Opinion 21

# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE POWER COMPANY, INC., A
NEVADA CORPORATION D/B/A
CRAZY HORSE TOO GENTLEMEN'S
CLUB; AND RICK RIZZOLO,
INDIVIDUALLY,
Appellants,
vs.
KIRK AND AMY HENRY, HUSBAND
AND WIFE,
Respondents.

No. 59328

FILED

MAR 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court judgment in a tort action. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed.*

Patti, Sgro & Lewis and Anthony P. Sgro, Las Vegas; Rogers, Mastrangelo, Carvalho & Mitchell, Ltd., and Daniel E. Carvalho and Charles A. Michalek, Las Vegas,
for Appellants.

Campbell & Williams and Donald J. Campbell and Philip R. Erwin, Las Vegas; Hunterton & Associates and C. Stanley Hunterton, Las Vegas,
for Respondents.

14-09688

BEFORE THE COURT EN BANC.[1]

## *OPINION*

By the Court, DOUGLAS, J.:

In this opinion, we address whether NRCP 41(e)'s provision requiring dismissal for want of prosecution applies to an action in which the parties entered into a written and signed settlement agreement before NRCP 41(e)'s five-year deadline expired, and whether the district court erred in reducing the parties' settlement agreement to judgment. We hold that NRCP 41(e) does not apply to such an action and that the district court did not err in reducing the parties' settlement agreement to judgment. We therefore affirm the district court's judgment.

## *FACTS AND PROCEDURAL HISTORY*

Respondent Kirk Henry was rendered quadriplegic by a bouncer at the Crazy Horse Too Gentlemen's Club, which was owned and operated by appellant The Power Company, Inc. (TPCI). On October 2, 2001, Mr. Henry and his wife, respondent Amy Henry, filed a civil complaint against TPCI for, among other things, assault, battery, and loss of consortium. The Henrys later amended their complaint to include TPCI's president, appellant Rick Rizzolo, and to add causes of action for negligent hiring, retention, and supervision.

---

[1]The Honorable Kristina Pickering voluntarily recused herself from participation in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

On August 8, 2006, four years and ten months after the Henrys filed their action, they entered into a settlement agreement with TPCI and Rizzolo.[2] The settlement agreement provides that upon TPCI and Rizzolo's payment of $10 million to the Henrys, the Henrys will release TPCI and Rizzolo from all liability related to Mr. Henry's injury. While $1 million was owed to the Henrys at signing, the remaining $9 million was due upon the Crazy Horse Too's sale, regardless of the sale's net proceeds, per the settlement agreement. TPCI and Rizzolo paid the Henrys $1 million at signing.

Several months after entering into the settlement agreement, the Henrys moved the district court to reduce the agreement to judgment. The district court denied the motion on the grounds that the settlement agreement had not been breached. Less than a year later, the Henrys moved the district court to reduce the settlement agreement to judgment for a second time without success because, according to the district court, the club had not been sold to trigger the payment of the remaining $9 million owed to the Henrys according to the agreement's terms.

---

[2]Two months before entering into their settlement agreement, the Henrys, TPCI, and Rizzolo participated in a global settlement process with the federal government relating to federal criminal charges pending against TPCI and Rizzolo and the potential civil liability to the Henrys. While TPCI and Rizzolo entered individual plea deals with the federal government that required them to pay restitution to the Henrys, the Henrys were not parties to any government agreement.

Prior to the club's sale, and more than five years after the Henrys filed their complaint, TPCI and Rizzolo moved the district court to dismiss the Henrys' action under NRCP 41(e) for want of prosecution on two occasions. The district court denied the first motion to dismiss, stating that the motion had no merit insofar as the Henrys had been diligent in the action. In denying the second motion to dismiss, the district court concluded that NRCP 41(e) did not apply because the settlement agreement obviated the need for a trial on the merits.

Ultimately, the Crazy Horse Too sold at a nonjudicial foreclosure sale for $3 million.[3] Having received no payment from TPCI and Rizzolo for the $9 million owed after the club's sale, the Henrys filed a third motion to reduce the settlement agreement to judgment. The district court granted that motion. TPCI and Rizzolo appeal the judgment and raise arguments regarding the district court's denials of their two motions to dismiss under NRCP 41(e).

---

[3]TPCI and Rizzolo suggest that the nonjudicial foreclosure sale did not constitute a sale for the purpose of the settlement agreement, but they fail to support this contention with sufficient argument or legal authority, and so we do not address it in this opinion. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (declining to consider an issue when the party failed "to cogently argue, and present relevant authority, in support of his appellate concerns").

## DISCUSSION

*The district court properly denied TPCI and Rizzolo's two motions to dismiss for want of prosecution under NRCP 41(e)*

This court reviews questions of law de novo. *Garcia v. Prudential Ins. Co. of Am.*, 129 Nev. ___, ___, 293 P.3d 869, 872 (2013). The question of law before us is whether NRCP 41(e) requires dismissal of an action in which the parties have entered into a written and signed settlement agreement concerning the action within five years after the plaintiffs filed the complaint.

TPCI and Rizzolo argue that NRCP 41(e)'s language required the district court to grant their motions to dismiss for want of prosecution regardless of the settlement agreement because the Henrys failed to bring the case to trial within five years of filing their complaint. According to TPCI and Rizzolo, it follows that the district court's reduction of the settlement agreement to judgment after the five-year rule had been invoked was void. The Henrys argue that the application of NRCP 41(e) to an action in which the parties have entered into a written and signed settlement agreement is a matter of first impression, and that we should follow the California courts by determining that a valid settlement agreement nullifies a provision mandating dismissal for want of prosecution. *See Gorman v. Holte*, 211 Cal. Rptr. 34 (Ct. App. 1985) (concluding that a settlement agreement renders California's mandatory dismissal-for-want-of-prosecution provision legally irrelevant).

In Nevada, a district court is required to dismiss an action that has not been brought to trial within five years after the plaintiff filed the complaint, unless the parties stipulate in writing to extend the time for trial. NRCP 41(e) (stating that such an action "shall be dismissed by

SUPREME COURT
OF
NEVADA

(O) 1947A

5

the court"). Dismissal for want of prosecution under NRCP 41(e) is mandatory, and the court may not examine the equities of a case to determine whether the time should be extended. *Monroe v. Columbia Sunrise Hosp. Ctr.*, 123 Nev. 96, 99-100, 158 P.3d 1008, 1010 (2007). When a motion to dismiss under NRCP 41(e) is improperly denied, the district court lacks any further jurisdiction, rendering its subsequent orders going to the merits of the action void. *Cox v. Eighth Judicial Dist. Court*, 124 Nev. 918, 925, 193 P.3d 530, 534 (2008). Therefore, if NRCP 41(e) applies here, the district court should have dismissed the Henrys' action and the district court's judgment on the settlement agreement is void.

This court has not addressed whether NRCP 41(e) applies when the parties have entered into a written and signed settlement agreement that resolves all of the issues raised in the complaint. TPCI and Rizzolo contend that this court's holding in *Smith v. Garside*, 81 Nev. 312, 402 P.2d 246 (1965), controls our decision in this matter. In *Smith*, this court held that the plaintiff's failure to bring her case to trial within the mandatory time period under NRCP 41(e) required dismissal of her case for want of prosecution when a proper trial date was vacated in light of a settlement understanding that was never completed. 81 Nev. at 313-14, 402 P.2d at 246-47. In concluding that the settlement understanding did not remove the action from the scope of NRCP 41(e), the court stated that once the agreement was reached, the plaintiff was obligated to complete the agreement and obtain a dismissal of the case on that ground. *Id.* at 314, 402 P.2d at 247. Notably, the *Smith* opinion did not discuss the legal principles underlying such a requirement or the consequences of its

application. *See id.* Thus, we take this opportunity to clarify *Smith* and address the effect of a settlement agreement on the application of NRCP 41(e)'s mandatory dismissal provision.

In *Smith*, although the plaintiff asserted that a settlement was reached, there was no indication that a binding settlement agreement was formed, such as by putting the terms of the agreement into the record or by reducing the agreement to writing. *See* EDCR 7.50 (providing that an agreement or stipulation between the parties or their attorneys will not be effective "unless the same shall, by consent, be entered in the minutes in the form of an order, or unless the same is in writing subscribed by the party against whom the same shall be alleged, or by the party's attorney"); *see also* DCR 16. Absent an enforceable settlement agreement, the parties' unconsummated settlement understanding had no effect on the proceedings, and NRCP 41(e) applied. *See Smith*, 81 Nev. at 314, 402 P.2d at 247.

Had the *Smith* parties entered into a written and signed settlement agreement before NRCP 41(e)'s time period elapsed, the situation would have been different. An enforceable settlement agreement "has the attributes of a judgment in that it is decisive of the rights of the parties and serves to bar reopening of the issues settled." *See Gorman*, 211 Cal. Rptr. at 37. Based on this reasoning, California courts have held that California's mandatory dismissal-for-want-of-prosecution provision does not apply to a case when there is an existing, valid settlement

agreement to the dispute that leaves no issues to be tried.[4] *See Gorman,* 211 Cal. Rptr. at 36-37.

The California courts' reasoning regarding settlement agreements is consistent with this court's treatment of district court orders granting summary judgment. In addressing the effect of a summary judgment motion on the application of NRCP 41(e)'s dismissal provision, this court has looked to the California courts' definition of a trial as "'the examination before a competent tribunal, according to the law of the land, of questions of fact or of law put in issue by pleadings, for the purpose of determining the rights of the parties.'" *See United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus.,* 105 Nev. 816, 819-20, 783 P.2d 955, 957 (1989) (quoting *Bella Vista Dev. Co. v. Superior Court of Cal.,* 36 Cal. Rptr. 106, 109 (Ct. App. 1963)). Applying that definition, this court has concluded that a case was "brought to trial" under NRCP 41(e) when a plaintiff filed a summary judgment motion before the expiration of the five-year rule and the district court subsequently granted that motion because "the granting of a motion for summary judgment involves first finding that no triable issues of fact remain and then determining the rights of the parties by applying the law

---

[4]Although the relevant California provisions are different from the Nevada statute insofar as the California provisions include an exception under which dismissal is not required if, for any reason, bringing the action to trial "was impossible, impracticable, or futile," Cal. Civ. Proc. Code § 583.340(c) (West 2011), the *Gorman* court did not rely on this exception when reaching its decision. *See Gorman,* 211 Cal. Rptr. at 36-37.

to the facts." *See United Ass'n of Journeymen*, 105 Nev. at 820, 783 P.2d at 957.

While a settlement agreement will not necessarily involve a judicial determination, it does resolve the relative legal rights and liabilities of the parties, eliminating the need to try any issues resolved by the agreement. *See id.* Accordingly, we conclude that, when the parties have entered into a binding settlement agreement that resolves all of the issues pending in the action, eliminating the need for a trial, the case has been "brought to trial" within the meaning of NRCP 41(e). Thus, the district court here did not err in denying TPCI and Rizzolo's motions to dismiss the Henrys' action under NRCP 41(e) because the Henrys, TPCI, and Rizzolo entered into an enforceable settlement agreement resolving the pending issues within five years of the Henrys filing their complaint. *See* EDCR 7.50. And because the NRCP 41(e) motions were properly denied, the district court retained jurisdiction over the matter until the final judgment was entered.[5] *Cf. Cox*, 124 Nev. at 925, 193 P.3d at 534.

---

[5]To the extent that the *Smith* opinion suggests that a plaintiff who has entered into an enforceable settlement agreement must promptly dismiss his or her complaint, such a dismissal would deprive the district court of jurisdiction over the parties, *see SFFP, L.P. v. Second Judicial Dist. Court*, 123 Nev. 608, 173 P.3d 715 (2007), potentially requiring a party to initiate a new action in contract to enforce the agreement if the other party fails to perform. In light of this and other legitimate reasons why an action might remain in the district court when the parties have entered into a settlement agreement, we clarify that it is within the district court's purview to determine, on a case-by-case basis, whether judicial economy is best served by allowing an action to remain pending

*continued on next page . . .*

*The district court properly granted the Henrys' motion to reduce the settlement agreement to a judgment*

TPCI and Rizzolo alternatively argue that, even if the district court did not err by declining to dismiss the case under NRCP 41(e), the court was precluded from reducing the settlement agreement to judgment in a summary proceeding without considering their contract defenses or resolving existing factual disputes. Specifically, TPCI and Rizzolo contend that their performance under the agreement was contingent on Rizzolo having one year to operate the club so that there would be sufficient proceeds, either generated from the club's sale or saved during the year of operation, to pay the Henrys what was owed. The Henrys contend that the district court properly reduced the settlement agreement to judgment because the agreement's terms were unambiguous and did not include the contingencies alleged by TPCI and Rizzolo.

A settlement agreement is a contract governed by general principles of contract law. *May v. Anderson*, 121 Nev. 668, 672, 199 P.3d 1254, 1257 (2005). Like a contract, the interpretation of a settlement agreement is reviewed de novo. *See id.* We have stated that contracts will be construed from their written language and enforced as written. *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 278, 21 P.3d 16, 20 (2001). Thus, when a contract's language is unambiguous, this court will construe and

_____

*. . . continued*

after a settlement agreement has been reached but before the parties have completely performed their obligations.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

enforce it according to that language. *See In re Amerco Derivative Litig.*, 127 Nev. ___, ___, 252 P.3d 681, 693 (2011). A district court can grant a party's motion to enforce a settlement agreement by entering judgment on the instrument if the agreement is either reduced to a signed writing or entered in the court minutes in the form of an order, *see Resnick v. Valente*, 97 Nev. 615, 616, 637 P.2d 1205, 1206 (1981); *see also* EDCR 7.50; DCR 16, so long as the settlement agreement's material terms are certain. *May*, 121 Nev. at 672, 119 P.3d at 1257.

Here, the settlement agreement's language is unambiguous. TPCI and Rizzolo agreed to pay the Henrys $10 million in exchange for a release of all liability related to Mr. Henry's injury at the Crazy Horse Too upon the club's sale. While the settlement agreement stated that the sale of the Crazy Horse Too would be consistent with the terms of TPCI and Rizzolo's federal plea agreements, the terms of the settlement agreement do not make payment contingent on Rizzolo's management of the Crazy Horse Too for one year or on the generation of sufficient proceeds to pay the settlement amount. Instead, the settlement agreement unequivocally states that TPCI and Rizzolo were required to pay the remaining $9 million to the Henrys regardless of the sufficiency of the proceeds from the club's sale. Thus, the district court properly determined that the settlement agreement must be enforced according to its clear language, *see In re Amerco Derivative Litig.*, 127 Nev. at ___, 252 P.3d at 693, which requires TPCI and Rizzolo to pay the Henrys $9 million upon the sale of the Crazy Horse Too. Because the Crazy Horse Too was sold, TPCI and Rizzolo are obligated to pay the Henrys $9 million.

The parties entered into a written and signed settlement agreement with unambiguous material terms. Accordingly, the district court did not err in reducing the settlement agreement to judgment on the Henrys' motion.[6] *See Resnick*, 97 Nev. at 616, 637 P.2d at 1206.

Based on the foregoing, we affirm the judgment of the district court.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

---

[6]We have considered all of TPCI and Rizzolo's remaining arguments and find that they lack merit.