An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

GREG J. PAULK, INDIVIDUALLY AND AS A TRUSTEE, OFFICER AND DIRECTOR; THE GREG JESSE PAULK TRUST, DATED JANUARY 23, 1998; THE GREG JESSE PAULK TRUST, DATED OCTOBER 22, 1997; AND NEW-COM, INC., A NEVADA CORPORATION,

Appellants/Cross-Respondents,

vs.

BEN MAESE, INDIVIDUALLY,

Respondent/Cross-Appellant.

No. 61998

**FILED**

NOV 2 0 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING*

This is an appeal and cross-appeal from a final district court order in a corporations and contract action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

Appellants Greg Paulk, New-Com, Inc., and the Greg Jesse Paulk Trusts ("Trusts") were among the defendants in a suit that respondent Ben Maese filed in December 2010. That suit alleged contract claims relating to a memorandum of understanding ("MOU") for the sale of New-Com stock, a real property sale agreement, and unpaid wages and unused vacation time. Prior to trial, Maese sent separate offers of judgment to Paulk, New-Com, and the Trusts for $3.1 million each. Those offers were rejected.

Following a bench trial, the district court granted Maese (1) specific performance on the MOU resulting in a $4,323,277 award, (2)

SUPREME COURT
OF
NEVADA

(O) 1947A

14- 38305

$44,897.23 for breach of the real property sale agreement, and (3) $33,340.82 for unpaid wages and unused vacation time. The district court denied Maese's request for attorney fees, finding that his offers of judgment failed to comply with NRS 17.115 and NRCP 68. This appeal and cross-appeal followed.

Maese and Ben Kulick were investment partners in a biodiesel enterprise. Paulk was chief executive officer of New-Com and controlled a majority of its shares. Around January 1, 2007, New-Com exchanged some of its own shares for shares that Maese and Kulick held in the biodiesel enterprise, making Maese and Kulick New-Com shareholders. Additionally, Kulick negotiated employment with New-Com for himself and Maese.

In mid-2007, Paulk and Kulick[1] negotiated selling Paulk's shares back to New-Com with the expectation that New-Com would be sold to a third party. Paulk and Kulick also executed an MOU providing that if the envisioned sale did not occur, Paulk would elect to either sell his shares to New-Com or purchase the shares owned by Kulick and Maese. Further, if Paulk opted to purchase Maese's and Kulick's shares, both Maese and Kulick would be given employment contracts.

The third-party sale did not materialize, so on October 1, 2007, Paulk exercised his option to purchase the shares owned by Maese

---

[1]Here and in regard to the subsequent MOU, Paulk was acting as an individual and trustee controlling a substantial portion of New-Com's shares, while Kulick acted on behalf of New-Com as its chief operating officer.

and Kulick. Paulk provided promissory notes reflecting the sale, but he never produced employment agreements.

In the fall of 2007, Maese contracted to purchase a second home in Idaho, intending to pay for it with the proceeds from the sale of his New-Com shares. Since the sale had not yet occurred, Paulk agreed to have New-Com purchase the home and allow Maese to repay New-Com with the proceeds from selling his shares. New-Com did in fact purchase the house, and Maese signed a written contract memorializing the agreement. In June 2008, Paulk fired Maese. Paulk and New-Com never purchased Maese's shares; as a result, Maese was never able to purchase the Idaho property from New-Com with the proceeds from his shares.

On appeal, we are asked to determine whether (1) the district court findings of fact and conclusions of law are irreconcilably inconsistent, (2) Maese can enforce the MOU Kulick and Paulk signed, and (3) sufficient evidence supports the district court award for unpaid wages and unused vacation time. On cross-appeal, we are asked to determine whether the district court abused its discretion in denying Maese's request for attorney fees. We affirm in part because we conclude that (1) no irreconcilable inconsistency exists in the district court's findings, (2) Maese can enforce the MOU, (3) sufficient evidence supports the award for unpaid wages, and (4) the district court did not abuse its discretion in denying Maese's request for attorney fees. We reverse in part because there is insufficient evidence to support the district court's award for unused vacation time.

*The district court's findings of fact and conclusions of law are not irreconcilably inconsistent*

First, appellants claim that the district court's findings are inconsistent because the district court found both that none of the

appellants made an intentional or negligent misrepresentation or omission to Maese and that New-Com and Paulk never disclosed to Maese that they did not plan to buy out his New-Com shares in accordance with the MOU. The first finding was related to Maese's tortious misrepresentation claims on which appellants prevailed. The second finding relates to appellants' defense that the MOU could not be enforced without a signed agreement between Maese and New-Com. In light of the district court's finding that Maese was a third-party beneficiary to the MOU, these findings are not irreconcilably inconsistent. Even if a contradiction resulted from the district court's finding that no misrepresentation occurred, that finding benefited appellant. Thus, the alleged error, if any, was harmless and would not justify reversal. *See Sheraden v. Black*, 752 P.2d 791, 795 (N.M. Ct. App. 1988).

Second, appellants argue that there is a contradiction between the district court's findings that Paulk and New-Com entered the MOU and that Paulk and New-Com did not intend to follow the MOU in accomplishing the New-Com share buyout. Appellants contend that these findings show that the district court found a contract existed even though there was no mutual intent to perform under the terms of the agreement. Although mutual assent is required to form a valid contract, *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005), appellants' argument lacks merit because a party's undisclosed, subjective intent is immaterial when determining the existence of a contract. *James Hardie Gypsum (Nevada) Inc. v. Inquipco*, 112 Nev. 1397, 1402, 929 P.2d 903, 906 (1996), *overruled on other grounds by Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 117 Nev. 948, 955 n.6, 35 P.3d 964, 968-69 n.6 (2001). "'[S]elf-serving testimony of the parties as to their subjective

intentions or understandings is not probative evidence of whether the parties entered into a contract.'" *Id.* (quoting *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982)). There is no inconsistency in these findings because Paulk's and New-Com's subjective intent not to perform under the contract is irrelevant to whether a contract was formed.[2]

Finally, appellants argue that the district court's findings are inconsistent in that the court found an enforceable contract while also finding that eventually Paulk and New-Com no longer intended to perform under the MOU. Appellants contend that this is an implied finding that the parties abandoned the contract. As detailed below, although parties can abandon a contract "when both parties depart from the terms of the contract by mutual consent," *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 292, 89 P.3d 1009, 1019 (2004), such abandonment is not always a defense to a third-party beneficiary's claim.

*Maese was entitled to enforce the MOU as a third-party beneficiary*

Appellants first argue that Maese cannot enforce the MOU because he was not a third-party beneficiary. Whether a claimant is an intended third-party beneficiary is reviewed *de novo*. *See Benchmark Ins. Co. v. Sparks*, 127 Nev. ___, ___, 254 P.3d 617, 620 (2011). To obtain third-party beneficiary status, "there must clearly appear a promissory intent to benefit the third party, and ultimately it must be shown that the third party's reliance thereon is foreseeable." *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824-25 (1977) (citations omitted).

---

[2]Appellants make similar arguments regarding their intent to make Maese a third-party beneficiary to the MOU. As above, the subjective intent of the parties is irrelevant.

Maese was a third-party beneficiary here. First, there was clearly a promissory intent to benefit Maese. The MOU states that "Paulk agrees to buyout [sic] Kulick's and Maese's shares of New-Com, Inc., 12.9777% and 5.18% respectively, for a total consideration of $7,786,000 and $3,108,000 respectively." This demonstrates New-Com's and Paulk's intent that their promises benefit Maese. Second, Maese demonstrated actual reliance and that the reliance was foreseeable. Maese actually relied on the agreement by purchasing property in Idaho, intending to use proceeds from the sale of his New-Com shares. That reliance was foreseeable because New-Com agreed to buy the property for Maese and agreed that Maese could use the proceeds from the sale of his shares to buy the Idaho property from New-Com. Therefore, Maese was a third-party beneficiary.

Appellants further contend that the MOU is unenforceable because no consideration was given to Paulk in exchange for him exercising the option to buy out Kulick and Maese. We conclude that the option was enforceable and that there is substantial evidence that Paulk received consideration.

An enforceable contract requires "an offer and acceptance, meeting of the minds, and consideration." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. ___, ___, 283 P.3d 250, 255 (2012) (internal quotation marks omitted). "[W]hether a contract exists is [a question] of fact." *Id.* (alterations in original) (internal quotation marks omitted). An option becomes irrevocable, and thus fully enforceable, after acceptance. *Mohr Park Manor, Inc. v. Mohr*, 83 Nev. 107, 111-13, 424 P.2d 101, 105 (1967). Paulk had the option of purchasing Kulick's and Maese's shares or having New-Com purchase his own shares. That option

became irrevocable and thus enforceable upon his election to purchase Kulick's and Maese's shares in the October 1 letter. Further, the district court determined that the terms of the MOU and the October 1 letter formed an enforceable agreement, necessarily supported by consideration. That finding is supported by substantial evidence because the terms allowed Paulk himself to choose whichever option he preferred, and depending on his choice, he would receive either money from New-Com or New-Com shares from Kulick and Maese. Therefore, the option here was enforceable because it became irrevocable after the October 1 letter and there is substantial evidence that it was supported by consideration.

Finally, appellants argue that Maese cannot enforce the MOU because Paulk and New-Com abandoned the agreement. We conclude that abandonment is not a valid defense against Maese.

Parties may abandon a contract's terms by mutual consent, either express or implied. *J.A. Jones Constr. Co.*, 120 Nev. at 292, 89 P.3d at 1019. Parties to a contract benefitting a third party may modify their duties to an intended beneficiary, but "[s]uch a power terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise." Restatement (Second) of Contracts § 311(3) (1981). Here, Maese arranged to buy the Idaho property in reliance on the promises contained in the MOU and the October 1 letter without knowledge that Paulk and New-Com had abandoned the MOU terms. As such, appellants cannot use abandonment as a defense to Maese's claims as a third-party beneficiary.

*There is substantial evidence to support the district court's award for unpaid wages but not its award for unused vacation time*

Appellants argue that substantial evidence does not support the district court's award of unpaid wages and unused vacation time

because there was no express employment agreement. In regard to wages, Maese alleged that Paulk promised to pay him for 6 weeks after his termination. Paulk argues that there was no employment agreement, and absent such an agreement Maese is not entitled to payment for hours not actually worked.

An employee seeking to enforce an employment agreement has the burden of showing that an express or implied employment agreement exists. *Am. Bank Stationery v. Farmer*, 106 Nev. 698, 701, 799 P.2d 1100, 1101-02 (1990). The existence of a contract is a factual finding reviewed for clear error and substantial evidence. *May*, 121 Nev. at 672-73, 119 P.3d at 1257. Here, Maese testified that he and Paulk agreed that Maese's wages would continue. Paulk admitted at trial that he agreed that Maese's wages would continue to be paid for a reasonable time until Maese found a new job. This is sufficient evidence to support the district court's finding that there was an agreement to pay Maese for 6 weeks following his termination. Therefore, we affirm the district court's $10,692 award for unpaid wages.

Conversely, there is no evidence in the record regarding any agreement that Maese would be paid for unused vacation time, and Maese cites no authority for the proposition that an employee is entitled to payment for unused vacation time upon termination absent an express agreement. Further, this court has indicated that an employment agreement dictates the terms of payment for unused sick leave upon a public employee's termination. *Pressler v. Reno*, 118 Nev. 506, 512, 50 P.3d 1096, 1100 (2002). We are presented with no reason to treat unused vacation time differently. Based on the foregoing, the district court's award of $22,648.82 for unused vacation time is not supported by

substantial evidence. The portion of the judgment awarding Maese unused vacation time is reversed, and the case is remanded to the district court to recalculate interest for the remaining award.

*The district court did not abuse its discretion in denying Maese's request for attorney fees*

On cross-appeal, Maese argues that the district court erred by denying his motion for attorney fees.

This court reviews a district court's decision to grant or deny attorney fees for an abuse of discretion. *Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1027-28 (2006). This court reviews the interpretation of statutes authorizing attorney fees *de novo*. *Id.* at 417, 132 P.3d at 1028. NRCP 68 and NRS 17.115 allow litigants to make an offer of judgment. The offeror can recover post-offer costs and fees if the offeree rejects an offer of judgment and subsequently fails to obtain a more favorable judgment. NRS 17.115; NRCP 68. An offeror may make apportioned offers to multiple parties and may require acceptance by all parties before the offer becomes binding. NRS 17.115(7); NRCP 68(b).

Here, Maese made separate offers to Paulk, the Trusts, and New-Com in the amount of $3,100,000 each. According to the district court, Maese's offers did not comply with NRCP 68 and NRS 17.115. Maese argues that the district court erred by reading NRCP 68 and NRS 17.115 to *require* that the offers be apportioned between the offerees and be contingent on acceptance by all offerees. Maese is incorrect. The district court concluded that Maese's failure to apportion and require acceptance by all offerees effectively made his offer of judgment $9.3 million because $3.1 million was required from each defendant to settle all claims. Even if such an approach is permissible, the $9.3 million offer to settle was not surpassed by the $4,323,277 judgment in Maese's favor.

 

Therefore, the district court did not abuse its discretion in denying Maese's request for attorney fees.

Accordingly we

ORDER the judgment of the district court AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Saitta

cc:  Hon. Elizabeth Goff Gonzalez, District Judge
     Greenberg Traurig, LLP/Las Vegas
     Jolley Urga Wirth Woodbury & Little
     Eighth District Court Clerk