138 Nev., Advance Opinion 9

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MAIDE, LLC, A NEVADA LIMITED LIABILITY COMPANY, D/B/A GENTLE SPRING CARE HOME; SOKHENA K. HUCH, AN INDIVIDUAL; AND MIKI N. TON, AN INDIVIDUAL, Appellants, vs. CORRINE R. DILEO, AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF THOMAS DILEO; THOMAS DILEO, JR., AS STATUTORY HEIR TO THOMAS DILEO; AND CINDY DILEO, AS STATUTORY HEIR TO THOMAS DILEO, Respondents. | No. 81804 |



FILED

FEB 24 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion to compel arbitration in a wrongful death action. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Reversed and remanded.*

Lewis Brisbois Bisgaard & Smith LLP and S. Brent Vogel and John M. Orr, Las Vegas,
for Appellants.

Cogburn Law and Hunter S. Davidson and Jamie S. Cogburn, Henderson,
for Respondents.

Claggett & Sykes Law Firm and Micah S. Echols, Las Vegas; Sharp Law Center and A.J. Sharp, Las Vegas,
for Amicus Curiae Nevada Justice Association.

BEFORE THE SUPREME COURT, PARRAGUIRRE, C.J., STIGLICH and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

NRS 597.995 requires any agreement that includes an arbitration provision to also include a specific authorization for that provision—or the provision is void. But because NRS 597.995 singles out and disfavors arbitration provisions by imposing stricter requirements on them than on other contract provisions, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2012), preempts NRS 597.995 in cases involving interstate commerce. Below, the district court concluded that an arbitration provision was void under NRS 597.995 for failure to include a specific authorization. Because we conclude the FAA applies here and preempts NRS 597.995, the district court's decision was erroneous, and we reverse.

*FACTS AND PROCEDURAL HISTORY*

Maide, LLC, owns and operates Gentle Spring Care Home and Bella Estate Care Home, residential group homes in Las Vegas. Thomas DiLeo moved to Gentle Spring after he developed dementia so that he could receive 24-hour care and supervision. His ex-wife and personal representative, Corinne DiLeo, signed the paperwork to admit Thomas to Gentle Spring. The admission paperwork included a separate one-page addendum that contained one paragraph addressing "Grievances" and a second paragraph addressing "Arbitration" (the addendum).[1] The

---

[1]Gentle Spring used a form addendum with a heading for another care home Maide owned, but that fact does not affect this appeal.

paragraphs were set in a large font, and the addendum contained its own signature block.

After his admission to Gentle Spring, Thomas injured his leg. The DiLeo family alleged that Gentle Spring staff improperly bandaged Thomas's leg, which developed gangrene. Thomas's leg was later amputated, and he passed away shortly thereafter.

Corinne, as special administrator for the estate, and Cindy DiLeo and Thomas DiLeo, Jr., as statutory heirs, filed a complaint asserting causes of action for abuse/neglect of an older person, negligence, and wrongful death, and a survival action under NRS 41.100 against Maide and individuals connected to Gentle Spring (collectively Maide). Maide moved to compel arbitration based on the addendum, but the DiLeos countered that the arbitration paragraph in the addendum was void and unenforceable under NRS 597.995 for failure to include a separate signature or initial line pertaining solely to that paragraph.

The district court initially agreed with Maide, determining the arbitration provision was binding under NRS 597.995. The district court concluded, however, that the statutory heirs were not bound by the arbitration provision and stayed their claims pending arbitration. The DiLeos moved for rehearing, and the district court granted the motion after finding the arbitration addendum lacked specific authorization, such as a separate signature block or initial section, as required by NRS 597.995. The

district court vacated the earlier order and denied Maide's motion to compel arbitration.[2] This appeal followed.[3]

## DISCUSSION

Where an agreement contains an arbitration provision, NRS 597.995(1) requires that agreement to "include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." Failure to include some form of specific authorization for the arbitration provision voids the arbitration provision. NRS 597.995(2).

Below and on appeal, the parties focused on whether the arbitration provision in the addendum complies with NRS 597.995. While this case proceeded in district court, however, we determined that the FAA, 9 U.S.C. § 1 et seq. (2012), where it applies, preempts NRS 597.995. *MMAWC, LLC v. Zion Wood Obi Wan Tr.*, 135 Nev. 275, 277, 448 P.3d 568, 570 (2019). Specifically, if a state law "single[s] out and disfavor[s] arbitration," such as NRS 597.995 does by imposing stricter requirements on arbitration provisions than on other contract provisions, the FAA will preempt that law. *Id.* (internal quotation marks omitted).

A threshold issue in this appeal is whether the FAA applies because, if it does, it will preempt NRS 597.995's specific authorization requirement, invalidate the district court's grounds for denying Maide's motion to compel arbitration, and moot the parties' arguments as to whether the arbitration provision complies with NRS 597.995. Maide failed

---

[2]Senior Judge J. Charles Thompson granted Maide's motion to compel arbitration. Judge Adriana Escobar granted the DiLeos' motion for rehearing.

[3]*See* NRS 38.247(1)(a) (providing that an order denying a motion to compel arbitration may be appealed).

to address the FAA until its reply brief on appeal, thereby waiving the issue. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). However, because failing to consider FAA preemption would require us to deliberately ignore obvious and controlling Nevada law, we nevertheless elect to address this point.[4] *Cf. Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (explaining we may consider an issue raised for the first time in the reply brief where doing so "is in the interests of justice").

In *U.S. Home Corp. v. Michael Ballesteros Trust*, we explained the FAA applies where the contract evidences a transaction that involves interstate commerce. 134 Nev. 180, 186, 415 P.3d 32, 38 (2018); *see also* 9 U.S.C. § 2 (2012). In the context of the FAA, the word "involves" "is broad and functionally equivalent to the word 'affecting,'" and a contract "affects or involves interstate commerce if Congress could regulate the transaction through the Commerce Clause." *Ballesteros*, 134 Nev. at 186; 415 P.3d at 38. In considering whether a contract comes within the purview of the FAA, we recognize that the FAA was intended to "signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Ballesteros*, 134 Nev. at 186, 415 P.3d at 38. Thus, we have determined that "[s]o long as 'commerce' is involved, the FAA applies." *Tallman v. Eighth Judicial Dist. Court*, 131 Nev. 713, 724, 359 P.3d 113, 121 (2015). As to arbitration provisions specifically, the FAA will apply so long as there is evidence that interstate commerce was involved in the transaction underlying the arbitration agreement. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 281 (1995) (adopting the

---

[4]We do not address the other arguments raised for the first time on appeal.

"commerce in fact" test); *see also Ballesteros*, 134 Nev. at 186-87, 415 P.3d at 38. Moreover, we have explained that "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'" and the FAA will even govern contracts evidencing intrastate economic activities so long as those contracts, "when viewed in the aggregate, substantially affect interstate commerce." *Ballesteros*, 134 Nev. at 186-87, 415 P.3d at 38-39 (internal quotation marks omitted).

For example, in *Ballesteros*, we considered whether the FAA governed an arbitration agreement contained in Covenants, Conditions, and Restrictions (CC&Rs). *Id.* at 180, 415 P.3d at 34. There, homeowners sued for construction defects in homes in a common interest community. *Id.* at 181, 415 P.3d at 34-35. A central issue was whether the FAA applied, as the homeowners argued that the CC&Rs addressed real estate and land that was a local concern. *Id.* at 181, 187, 415 P.3d at 34, 39. We rejected that argument, noting that the CC&Rs allowed the property to be developed, constructed, and sold and that "out-of-state businesses provided supplies and services in constructing the homes." *Id.* at 187, 415 P.3d at 39. We accordingly concluded that the transaction underlying the CC&Rs' arbitration agreement affected interstate commerce and the FAA controlled. *Id.* *Ballesteros* is not alone in concluding the definition of "interstate commerce" casts a wide net. Other cases instructive here include *Katzenbach v. McClung*, where the United States Supreme Court concluded a Birmingham restaurant engaged in interstate commerce by serving interstate travelers and by using food that moves through interstate commerce. 379 U.S. 294, 302-05 (1964). In *Allied-Bruce*, a contract to treat and repair termite damage involved interstate commerce where the material used to treat and repair termite damage came from outside the

SUPREME COURT
OF
NEVADA

(O) 1947A

6

state. 513 U.S. at 282. And in *MMAWC*, the FAA applied where a licensing agreement provided a party the right to use appellant's licensed marks internationally. 135 Nev. at 276, 448 P.3d at 569.

We have never addressed the FAA's application in the context of care- or nursing-home contracts. But the South Carolina Supreme Court noted that following *Allied-Bruce*, most, if not all, courts have concluded that nursing home residency contracts implicate interstate commerce, as such "contracts usually entail providing residents with meals and medical supplies that are inevitably shipped across state lines from out-of-state vendors." *Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 732 (S.C. 2014). Similarly, the Kentucky Supreme Court noted that many courts have applied the FAA to arbitration provisions in nursing-home contracts and that health care is an activity that, in the aggregate, represents a general practice subject to federal control. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 589-90 (Ky. 2012).

These and other cases across the country show that residency home contracts implicate the FAA where they regard supplies that are shipped across state lines or involve the use of federal funding. In *McGuffey Health & Rehabilitation Center v. Gibson*, for example, the Alabama Supreme Court concluded a nursing home engaged in interstate commerce by accepting Medicare for the patient's care and treatment and by purchasing goods used for the patient's care from other states. 864 So. 2d 1061, 1062-63 (Ala. 2003). The Georgia Court of Appeals concluded a nursing home engaged in interstate commerce by purchasing supplies from vendors in other states, treating patients from other states, and having patients insured through Medicare and private insurances located in other states. *Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 679 S.E.2d 785,

787-88 (Ga. Ct. App. 2009). An Illinois court determined a contract involved interstate commerce where Medicare paid for the patient's care and the facility received food, oxygen tanks, beds, and other supplies from vendors in other states, as well as provided services from companies situated in other states and used an out-of-state company to process its payroll. *Carter v. SSC Odin Operating Co.*, 955 N.E.2d 1233, 1239 (Ill. App. Ct. 2011), *reversed in part on other grounds by Carter v. SSC Odin Operating Co.*, 976 N.E.2d 344 (Ill. 2012). Similarly, a New Jersey court concluded that several nursing facilities that purchased supplies from out-of-state suppliers engaged in interstate commerce. *Estate of Ruszala v. Brookdale Living Cmtys., Inc.*, 1 A.3d 806, 817 (N.J. Super. Ct. App. Div. 2010); *see also THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012) (concluding a care facility engaged in interstate commerce by accepting Medicare patients and purchasing medical and office supplies and furniture across state lines), *aff'd* 532 F. App'x 813 (10th Cir. 2013); *Pickering v. Urbantus, LLC*, 827 F. Supp. 2d 1010, 1014 (S.D. Iowa 2011) (concluding the FAA applied where the facility purchased medical equipment, laundry supplies, food, and medical supplies from other states and where the parties were located in different states). Furthermore, even where the funding comes through Medicaid or another state medical assistance program, if the program is federally funded, a contract that utilizes those funds implicates interstate commerce and falls under the FAA.[5]  *In re Dec. Nine Co.*, 225 S.W.3d 693, 697-98 (Tex. App. 2006)

---

[5]The DiLeos urge us to adopt Oklahoma's approach in *Bruner v. Timberlane Manor Ltd. Partnership*, 155 P.3d 16, 28-31 (Okla. 2006), and conclude contracts that "involve[ ] a profoundly local transaction" and have a de minimis impact on commerce do not fall within the FAA. Given our

(concluding a contract involved interstate commerce and fell within the FAA where one party received federal funds through the state-run Medicaid program).

The record here supports that the contract falls under the FAA's purview. The admission agreement promised to provide Thomas with meals and snacks, laundry service, a bed and other basic furnishings, and care for temporary illnesses. It also gave Thomas's family the option of purchasing additional services, such as cable TV and long-distance phone calls. Supplies for these services are inevitably shipped across state lines. *Cf. Ruszala*, 1 A.3d at 817 ("Clearly these nursing home facilities cannot function without the materials procured from these out-of-state suppliers."). Further, the record shows that Thomas's care was paid for in part by Medicaid,[6] further implicating the FAA.[7] *Cf. Spradlin*, 893 F. Supp. 2d at 1184 (explaining the FAA applied in part because the care center received funding from a state Medicaid program that in turn was funded in

---

decision in *Ballesteros*, wherein we recognized the broad reach of the FAA, we decline to adopt Oklahoma's approach.

[6]At oral argument before this court, both parties acknowledged this funding came, at least in part, from the federal government. Thus, even if the government program utilized here is state-run, the contract still implicates interstate commerce because it ultimately makes use of federal funds.

[7]We note that *Ballesteros* clarified there must be evidence to demonstrate interstate commerce was involved before the FAA will apply. 134 Nev. at 187, 415 P.3d at 38. We are not persuaded by the DiLeos' argument that this record is devoid of evidence of interstate commerce, for the reasons stated in this opinion. Moreover, when asked at oral argument if a remand for further findings on this point would be appropriate, the DiLeos' counsel answered in the negative and urged us to settle this issue based upon the existing record.

substantial part by the federal government); *Owens v. Coosa Valley Health Care, Inc.*, 890 So. 2d 983, 987-88 (Ala. 2004) (explaining that a contract involved interstate commerce where a substantial portion of the funding for the nursing home came from federally funded Medicaid or Medicare); *In re Dec.*, 225 S.W.3d at 697-98 (rejecting the argument that a contract did not involve interstate commerce because a party received payments through Medicaid instead of Medicare, where the state's Medicaid program was "a conduit for the federal funds"); *see also Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.*, 154 So. 3d 1115, 1124-25 (Fla. 2014) (explaining a contract involved interstate commerce where it contemplated the referral of Medicare patients, even though the record showed no other evidence of interstate commerce).

Accordingly, we conclude the FAA governs and preempts NRS 597.995.[8] The district court therefore erroneously applied NRS 597.995 here and abused its discretion by denying the motion to compel arbitration. *See Land Baron Invs., Inc. v. Bonnie Springs Family Ltd. P'ship*, 131 Nev.

---

[8]Even if the FAA had not preempted NRS 597.995 here, the district court's decision was erroneous. Nevada has a "fundamental policy favoring the enforceability of arbitration agreements," and we "liberally construe arbitration clauses in favor of granting arbitration." *Tallman*, 131 Nev. at 720, 359 P.3d at 118-19 (internal quotation marks omitted). NRS 597.995(1) requires specific authorization for an arbitration provision, and we conclude that requirement was met here, where the arbitration provision was included in a separate, one-page, two-paragraph addendum with a signature line for that particular page.

We need not address the DiLeos' arguments regarding the statutory heirs, as the district court determined the heirs were not bound by the arbitration clause and Maide does not contest this finding.

686, 699 n.10, 356 P.3d 511, 520 n.10 (2015) (reviewing a district court's decision to deny a motion for reconsideration for an abuse of discretion).

## CONCLUSION

The FAA preempts NRS 597.995 in contracts involving interstate commerce. Under the FAA, state law may not impose rules that single out and disfavor arbitration. Because this contract involves interstate commerce, the FAA governs and preempts NRS 597.995. Accordingly, the district court erred by concluding NRS 597.995 voided the parties' arbitration agreement, by granting rehearing and vacating an order referring the Estate's claims to arbitration, and by denying the motion to compel arbitration. We therefore reverse that decision and remand with instructions to grant the motion to compel arbitration of the special administrator's claims.

_____, J.
Silver

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich