139 Nev., Advance Opinion 36

# IN THE SUPREME COURT OF THE STATE OF NEVADA

EL JEN MEDICAL HOSPITAL, INC.,
D/B/A EL JEN CONVALESCENT
HOSPITAL AND RETIREMENT
CENTER, A DOMESTIC
CORPORATION; TOOMEY REAL
ESTATE, LLC, A NEVADA LIMITED
LIABILITY COMPANY; AND JAMES
TOOMEY, INDIVIDUALLY AND AS
ADMINISTRATOR,
Appellants,
vs.
STACY TYLER, INDIVIDUALLY, AS
SPECIAL ADMINISTRATOR FOR THE
ESTATE OF GARY TYLER, AND AS
LEGAL GUARDIAN FOR OMEGA
TYLER, A MINOR; AZIAH TYLER, AS
STATUTORY HEIR TO GARY TYLER;
AND HEAVEN TYLER, AS
STATUTORY HEIR TO GARY TYLER,
Respondents.

No. 83945

FILED

SEP 21 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order denying, in part, a motion to compel arbitration in a wrongful death action. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Affirmed.*

Lewis Brisbois Bisgaard & Smith LLP and S. Brent Vogel, Adam Garth, Robert D. Rourke, and Ethan M. Featherstone, Las Vegas,
for Appellants.

Cogburn Law and Jamie S. Cogburn and Hunter S. Davidson, Henderson; Cameron Law and Daven P. Cameron, Las Vegas,
for Respondents.

23-31043

BEFORE THE SUPREME COURT, CADISH, PICKERING, and BELL, JJ.


*OPINION*

By the Court, PICKERING, J.:

Nevada's wrongful death statute, NRS 41.085, provides separate causes of action for the decedent's estate and the statutory heirs. Following the death of her husband, Gary Tyler, respondent Stacy Tyler asserted wrongful death claims individually and on behalf of Gary's estate and their minor child, and was joined by two adult statutory heirs, against appellant El Jen Convalescent Hospital and Retirement Center (El Jen). The district court compelled the estate's claims to arbitration pursuant to an arbitration agreement signed during Gary's admission to El Jen but found that the statutory heirs were not bound by the agreement, which they did not sign, and declined to compel arbitration of their claims.

El Jen appeals, and we affirm. Arbitration is a matter of contract. NRS 41.085 provides the statutory heirs with separate causes of action arising upon the death of the decedent that require the heirs' agreement if arbitration is to be compelled. While the heirs' claims derive from the injury to the decedent, that does not authorize the decedent to bind the heirs to arbitration absent their agreement, which the district court correctly determined was lacking here.

I.

A.

After suffering a series of strokes, 54-year-old Gary Tyler was admitted to El Jen for long-term care. During his admission, Gary's wife, Stacy Tyler, provided El Jen with two documents—a Nevada general

SUPREME COURT
OF
NEVADA

(O) 1947A

2

durable power of attorney and a durable power of attorney for healthcare decisions (together, power of attorney documents)—both of which designated her as Gary's agent in the event of his disability or incapacity. As part of El Jen's admission paperwork, Stacy signed an arbitration agreement on Gary's behalf as "the Resident." This agreement subjected any claim related to El Jen's services or care of Gary to arbitration and purported to bind all claims "derived through or on behalf of the Resident," including claims by Gary's heirs, to arbitration as well.

Gary was wheelchair-bound throughout his time at El Jen. At his family's request, El Jen arranged for the Regional Transportation Commission of Southern Nevada (RTC) to transport Gary to and from church. One Sunday, when the transport driver returned Gary to El Jen and found no El Jen staff member at the front desk, the driver left Gary alone in his wheelchair in El Jen's lobby. Gary stood up and fell, hitting his head on the floor. He later died, allegedly from complications stemming from the fall.

B.

Stacy and Gary's children (collectively, the Tylers) and Gary's estate sued El Jen, RTC, and others, asserting negligence, wrongful death, and survivorship claims. El Jen moved to compel arbitration of the claims against it pursuant to the arbitration agreement Stacy had signed on Gary's behalf. After requesting and receiving the power of attorney documents and supplemental briefing, the district court concluded that the estate's claims against El Jen were subject to the arbitration agreement. But the district court denied the motion as to Stacy's and the statutory heirs' individual wrongful death claims, finding that arbitration is a matter of contract and that neither Stacy nor the other heirs agreed to arbitrate their claims. Although the district court stayed litigation of the statutory heirs' claims

against El Jen pending the outcome of this appeal, it denied El Jen's request to stay the litigation pending the conclusion of the arbitration proceedings between El Jen and the estate.

El Jen appeals. It argues that the Tylers, as nonsignatory statutory heirs, are bound by the arbitration agreement because a statutory heir's claim under NRS 41.085 is "entirely derivative" of the decedent's claim. Alternatively, El Jen argues that the district court abused its discretion under NRS 38.221(7) by failing to stay the litigation until the estate's arbitration concludes.

## II.

A district court's order resolving a motion to compel arbitration may involve mixed questions of law and fact. *See Gonski v. Second Judicial Dist. Court*, 126 Nev. 551, 557, 245 P.3d 1164, 1168 (2010), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 415 P.3d 32 (2018). We review purely legal questions de novo, *Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990), and defer to the district court's factual findings unless they are clearly erroneous or not based on substantial evidence, *see May v. Anderson*, 121 Nev. 668, 672-73, 119 P.3d 1254, 1257 (2005).

## A.

El Jen argues that nonsignatory statutory heirs asserting wrongful death claims under NRS 41.085 are bound by a decedent's pre-death arbitration agreement. But as a predicate matter, the Tylers argue that the arbitration agreement is unenforceable because Stacy lacked legal authority to bind anyone since her powers of attorney were invalid. *See id.* at 672, 119 P.3d at 1257 (stating that enforceable contracts require acceptance by the offeree). Because the question of Stacy's legal authority is a question of fact, *see Simmons Self-Storage Partners, LLC v. Rib Roof,*

Supreme Court
of
Nevada

(O) 1947A

4

*Inc.*, 130 Nev. 540, 549, 331 P.3d 850, 856 (2014), we defer to the district court unless its finding is clearly erroneous or not based on substantial evidence.

Nevada has adopted the Uniform Power of Attorney Act (2006), 8B U.L.A. 175 (2014) (Uniform Act), codified at NRS 162A.200 through NRS 162A.660. NRS 162A.220(2) requires that a certificate of the principal's competency be attached to a power of attorney if, at the time of its execution, "the principal resides in a hospital, residential facility for groups, facility for skilled nursing or home for individual residential care." *See* NRS 162A.790(5) (2019) (imposing the same requirement for a durable power of attorney for healthcare decisions). The Tylers argue that this statute invalidates Stacy's powers of attorney because no certificate of competency was attached, and Gary signed them while he was a patient at Mountain's Edge Hospital. Further, citing deposition testimony from litigation involving another facility that cared for Gary, the Tylers allege that Gary may have lacked mental competency when he signed the power of attorney documents. *See* 2A C.J.S. *Agency* § 28 (2023) (defining competency to sign powers of attorney as "whether that person is able to understand and comprehend their own actions").

The district court rejected these challenges. It noted that the powers of attorney were signed two years before El Jen accepted Gary for long-term care and that they were notarized and appeared regular on their face. Under the Uniform Act, "[a] person that in good faith accepts an acknowledged power of attorney without actual knowledge that the power of attorney is . . . invalid" may rely on the power of attorney as valid. NRS 162A.360(2); *see* NRS 162A.815(2) (making similar provision for good faith reliance on a durable power of attorney for healthcare decisions). Even

Supreme Court
OF
Nevada

(O) 1947A

crediting the heirs' argument that a certificate of competency should have been attached, the arbitration agreement was nevertheless enforceable because the heirs failed to demonstrate that El Jen did not rely in good faith on the powers of attorney Stacy furnished. A properly executed and acknowledged power of attorney permits a party "to rely in good faith on the validity of the power of attorney, the validity of the agent's authority, and the propriety of the agent's exercise of authority"—and thus carry out the agent's instructions in effecting a transaction—"unless the person has actual knowledge to the contrary." Unif. Power of Attorney Act § 119 cmt., 8B U.L.A. 214.

The Tylers argue that the district court's finding of El Jen's good faith reliance was not supported by substantial evidence. Pointing to other admission documents that Stacy signed as "immediate family member" or "spouse," they maintain that she did not sign the arbitration agreement under her powers of attorney. But Stacy signed the arbitration agreement as "Resident/Representative," with "Resident" referring to Gary, and provided El Jen with the power of attorney documents identifying her as Gary's agent. Considering this evidence, the district court found that, while it was "difficult to tell" Stacy's intent when signing the arbitration agreement, "[i]t does appear that it was represented to [El Jen] that [Stacy] held power of attorney" when El Jen "entered into this agreement to take this person as a patient." The district court also found that the admission documents did not reasonably provide El Jen with knowledge of Gary's residency at Mountain's Edge Hospital or possible lack of competency two years earlier when he signed the power of attorney documents.

This sufficiently supports the district court's finding that El Jen did not have actual knowledge of the possible invalidity of Stacy's powers of

attorney and thus relied on them in good faith when it agreed to provide service and care to Gary. *See McClanahan v. Raley's, Inc.*, 117 Nev. 921, 924, 34 P.3d 573, 576 (2001) ("Substantial evidence has been defined as that which a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted). The lack of actual knowledge, as well as Stacy's signature as the "Resident/Representative" on the arbitration agreement pursuant to notarized powers of attorney identifying her as Gary's agent, allowed El Jen to rely on Stacy's authority to effectuate the arbitration agreement as Gary's attorney-in-fact. Based on the materials submitted to it, the district court properly rejected the Tylers' challenge to the arbitration agreement's validity.

B.

El Jen argues that the district court should have enforced the arbitration agreement against the statutory heirs as well as the estate. It maintains that, as written, the arbitration agreement subjects *all* claims arising from the care El Jen gave Gary to arbitration:

> It is the intention of the parties to this Arbitration Agreement that it shall in[ ]ure to the benefit of and bind the parties, their successors and assigns, including the agents, employees and servants of the Facility, and all persons who[se] claim is derived through or on behalf of the Resident, including that [of] any parent, spouse, child, guardian, executor[,] administrator, legal representative, or heir of the Resident.

Contracts that involve interstate commerce, like the arbitration agreement in this case, are subject to the Federal Arbitration Act (FAA). 9 U.S.C. §§ 1-16 (2012); *Maide, LLC v. DiLeo*, 138 Nev. 80, 82, 504 P.3d 1126, 1128 (2022). While the FAA "reflects a liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35

SUPREME COURT
OF
NEVADA

(O) 1947A

7

(1991) (internal quotation marks omitted), its goal is "to make arbitration agreements as enforceable as other contracts, but not more so," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). An enforceable arbitration agreement requires offer, acceptance, meeting of the minds, and consideration. *See May*, 121 Nev. at 672, 119 P.3d at 1257. And "[a]s a general rule, no one can be forced to arbitrate unless they have agreed to do so." 1 Thomas H. Oehmke & Joan M. Brovins, *Commercial Arbitration* § 8:1 (3d ed. Supp. 2023); *see also Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634, 189 P.3d 656, 660 (2008) (stating that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (internal quotation marks omitted). "There are exceptions when a nonsignatory may be bound to arbitrate," but "[a] signatory to an arbitration agreement has the burden to establish facts that would compel a resistant nonsignatory to arbitrate." Oehmke, *supra,* § 8:1.

The statutory heirs did not sign the arbitration agreement, nor is there any evidence they assented to its terms.[1] However, "nonsignatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *see Truck Ins. Exch.*, 124 Nev. at 634-35, 189 P.3d at 660 (noting theories by which courts have bound nonsignatories to arbitration, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel). El Jen

---

[1]Although Stacy signed the arbitration agreement as "Resident/Representative," the district court found that Stacy "did not agree to be bound individually" to the arbitration agreement, nor did she intend to bind the remaining statutory heirs, including her minor child. El Jen does not dispute this finding, nor does it argue that Stacy intended to sign the arbitration agreement in her individual capacity as statutory heir.

argues that the heirs' wrongful death claims under NRS 41.085 are derivative in nature and that the heirs, therefore, are bound by the arbitration agreement, which requires any claimant to arbitrate claims arising out of the care El Jen provided Gary.

"Wrongful death is a cause of action created by statute having no roots in the common law." *Alsenz v. Clark Cty. Sch. Dist.*, 109 Nev. 1062, 1064, 864 P.2d 285, 286 (1993). Nevada's wrongful death statute, NRS 41.085, provides that "[w]hen the death of any person . . . is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death." NRS 41.085(2); *see* NRS 41.085(1) (defining "heir" in this context to mean "a person who, under the laws of this State, would be entitled to succeed to the separate property of the decedent if the decedent had died intestate"). "The NRS 41.085 statutory scheme creates two separate wrongful death claims, one belonging to the heirs of the decedent and the other belonging to the personal representative of the decedent, with neither being able to pursue the other's separate claim." *Alcantara v. Wal-Mart Stores, Inc.*, 130 Nev. 252, 256, 321 P.3d 912, 914 (2014); *see also Alsenz*, 109 Nev. at 1064, 864 P.2d at 286 ("Under [NRS 41.085], both the decedent's heirs and representatives can maintain a cause of action for wrongful death. In this respect, NRS 41.085 is bifurcated."). The statutory heirs' damages include those that are personal to the heirs themselves—such as for the heir's "grief or sorrow[ and] loss of probable support [and] companionship"—and the heirs' damages "are not liable for any debt of the decedent." NRS 41.085(4). The estate's damages include special damages that "the decedent incurred or sustained before the decedent's death, and funeral expenses," *see* NRS

Supreme Court
OF
Nevada

(O) 1947A

9

41.085(5)(a), and "penalties . . . that the decedent would have recovered if the decedent had lived," *see* NRS 41.085(5)(b). The damages awarded to the estate "are liable for the debts of the decedent unless exempted by law." *Id.*

Although NRS 41.085 creates separate claims for both the statutory heirs and the estate, we have not addressed whether an heir's wrongful death claim is "wholly derivative" of the decedent's rights such that the decedent may bind nonsignatory statutory heirs to arbitration. States elsewhere are split on this issue and reach different conclusions based on a variety of considerations, including the language of their wrongful death statutes. *See, e.g., Boler v. Sec. Health Care, LLC*, 336 P.3d 468, 472-76 (Okla. 2014) (categorizing states that hold their wrongful death statutes are "wholly derivative" of, as opposed to "independent and separate" from, the decedent's claims); James E. Rooks, Jr., *Recovery for Wrongful Death* §§ 9:4 & 9:5 (2022) (collecting cases). States that conclude that claims under their wrongful death statutes are "wholly derivative" generally rely on statutory language that limits the heirs' recovery to instances where the decedent would otherwise have been entitled to pursue an action for the underlying injury.[2] *See Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 760 (Fla. 2013) (noting that "the language of the Act makes

---

[2]El Jen also directs us to the California Supreme Court case *Ruiz v. Podolsky*, which held that wrongful death claims of nonsignatory statutory heirs may be bound to an arbitration agreement that is governed by California's Medical Injury Compensation Reform Act (MICRA) if the agreement demonstrates an intent to bind those claims to arbitration. 237 P.3d 584, 592 (Cal. 2010). However, this holding rests on the policy considerations underlying MICRA; outside of these specific arbitration agreements, a decedent's arbitration agreement generally does not bind nonsignatory statutory heirs. *See Daniels v. Sunrise Senior Living, Inc.*, 151 Cal. Rptr. 3d 273, 280-81 (Ct. App. 2013).

clear a cause of action for wrongful death that is predicated on the decedent's entitlement to maintain an action and recover damages if death had not ensued" and holding that this makes the heirs' claim "wholly derivative") (internal quotation marks omitted); *Labatt*, 279 S.W.3d at 644 (emphasizing that "wrongful death beneficiaries may pursue a cause of action only if the individual injured would have been entitled to bring an action for the injury if the individual had lived" and holding that this makes their claims "wholly derivative") (internal quotation marks omitted); *see also Ballard v. Sw. Detroit Hosp.*, 327 N.W.2d 370, 371 (Mich. Ct. App. 1982) (similar); *Cleveland v. Mann*, 942 So. 2d 108, 118 (Miss. 2006) (similar). These courts reason that the statutory limitation places the heirs in the same "legal shoes" as the estate—those of the decedent—and empowers the decedent to preclude the heirs' claims altogether by settling globally pre-death and releasing the defendant from liability. *See, e.g., Labatt*, 279 S.W.3d at 645-46. In their view, since the decedent can bar the heirs' subsequent recovery through pre-death settlement agreements, the decedent may also bind the heirs to pre-death arbitration agreements. *Id.*

A growing majority of courts disagree and conclude that, under their wrongful death statutes, the decedent cannot bind the heirs to arbitrate their claims. These courts hold that, where a wrongful death statute establishes a distinct claim to compensate heirs for their individual loss, the heir's claim is separate from the decedent's and not subject to the decedent's pre-death contracts, unless those contracts extinguish the defendant's liability altogether. *See, e.g., Carter v. SSC Odin Operating Co.*, 976 N.E.2d 344, 359 (Ill. 2012) (holding that "[a]lthough a wrongful-death action is dependent upon the decedent's entitlement to maintain an action for his or her injury, had death not ensued, neither the Wrongful Death Act

SUPREME COURT
OF
NEVADA

(O) 1947A

11

nor this court's caselaw suggests that this limitation on the cause of action provides a basis for dispensing with basic principles of contract law in deciding who is bound by an arbitration agreement"); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 599 (Ky. 2012) (holding that because "the wrongful death claim is not derived through or on behalf of the [decedent], but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss, . . . a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claim"). In these states, "a wrongful death action, while derivative in the sense that it will not lie without a viable underlying personal injury claim, is a separate claim that comes into existence upon the death of the injured person." *Bybee v. Abdulla*, 189 P.3d 40, 46 (Utah 2008). The heirs pursuing a wrongful death claim thus "stand in, at most, one shoe of the decedent." *Id.* While the wrongful death claim may depend on the decedent having had a viable personal injury claim at time of death, that does not give the decedent the power to bind the heirs to pre-death contracts, such as arbitration agreements, that do not affect the viability of the personal injury claim. *Id.* at 47; *see Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. Ct. 2013) (stating that "wrongful death actions are derivative of decedent's injuries but are not derivative of decedent's rights").[3]

---

[3]A split of authority exists as to whether a release of liability by the decedent also releases the heirs' separate damages claim, with most jurisdictions holding that it does. 1 Jacob A. Stein, *Stein on Personal Injury Damages Treatise* § 3:48 (3d ed. 2023). Our holding that a pre-death contract not affecting the viability of the personal injury claim requires the heirs' consent as a matter of contract law makes it unnecessary to resolve this issue. *See Bybee*, 189 P.3d at 44 n.3 (similar).

Considering this split authority, we conclude that NRS 41.085 does not allow a decedent to bind a statutory heir's wrongful death claim to arbitration without the heir's consent. First, unlike the statutes in the derivative states, NRS 41.085(4) creates an independent cause of action in the heirs that is distinct from both the decedent's claim and that of the estate. Unlike Nevada, some derivative states require the *estate* to pursue damages on behalf of the decedent's heirs through a single action. *See* Fla. Stat. Ann. § 768.20 (West 2011) ("The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages . . . ."); Mich. Comp. Laws Ann. § 600.2922(2) (West 2010) ("Every action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased."). Other derivative states allow the heirs to pursue a wrongful death claim but require interested parties to pursue all recoverable damages through a single action. *See, e.g.*, Miss. Code Ann. § 11-7-13 (2019) (stating that "there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned"). Nevada's wrongful death statute, by contrast, allows both the statutory heirs and the estate to "*each* maintain an action for damages," NRS 41.085(2) (emphasis added), giving statutory heirs a cause of action separate and distinct from that of the estate. *Alcantara*, 130 Nev. at 256, 321 P.3d at 914; *see Fernandez v. Kozar*, 107 Nev. 446, 449, 814 P.2d 68, 70 (1991) (holding that a "wrongful death action . . . creates an independent right in designated survivors for damages they sustain by reason of the decedent's death") (omission in original) (internal quotation marks omitted).

Second, while Nevada's wrongful death statute limits the estate's recovery to "special damages . . . incurred or sustained before the

decedent's death," "funeral expenses," and "penalties . . . that the decedent would have recovered if the decedent had lived," and makes those awards liable for the decedent's debts, NRS 41.085(5), the heir's award is not similarly liable for the decedent's debts and includes no statutory limitation based on the decedent's right to pursue a claim for the underlying injury, *see* NRS 41.085(4). This differentiates NRS 41.085 from nearly all the derivative states cited by El Jen. *See Laizure*, 109 So. 3d at 760; *Ballard*, 327 N.W.2d at 371; *Labatt*, 279 S.W.3d at 644. Instead, Nevada's wrongful death scheme more closely aligns with the wrongful death statutes in states that provide a separate claim that arises upon the death of the decedent and compensates the statutory heirs for their individual loss. *Compare, e.g., Gilloon v. Humana, Inc.*, 100 Nev. 518, 520, 687 P.2d 80, 81 (1984) (stating that "NRS 41.085 creates an independent cause of action in the heirs and personal representatives of one whose death is caused by the wrongful act or neglect of another" and that "has no existence before the death of the decedent has occurred"), *with Carter*, 976 N.E.2d at 360 (noting that "a wrongful-death action does not accrue until death and is not brought for the benefit of the decedent's estate, but for the next of kin who are the true parties in interest"). To illustrate, statutory heirs in Nevada may pursue "their respective damages" for losses that the heirs suffered individually, such as "grief or sorrow" and "loss of probable support, companionship, society, comfort and consortium," which are not liable for payment of the decedent's debts. NRS 41.085(4). "[O]n behalf of the decedent's estate," the estate's personal representatives may also pursue damages, which *are* liable for payment of the decedent's debts and include penalties "that the decedent would have recovered if the decedent had lived" and damages incurred before the decedent's death (plus funeral expenses). NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

14

41.085(5)(a), (b). This provides statutory heirs with a separate and independent claim to compensate them for their personal losses resulting from the decedent's death.

We acknowledge that the damages a statutory heir may recover under NRS 41.085(4) complicates our analysis because these damages include not only those that are personal to the heirs—such as for the heirs' grief or sorrow—but also "damages for pain, suffering or disfigurement of the *decedent*" (emphasis added). While pain and suffering damages are traditionally personal to the decedent plaintiff, *see, e.g.*, NRS 41.100(3) (providing for the survival of a deceased plaintiff's claims for pain and suffering, to be recovered by the decedent's administrator), we do not believe that, by including them in the recovery available to the statutory heirs in a wrongful death suit, the Legislature viewed the heirs' claim as derivative, given the dual-claim structure of wrongful death claims in Nevada, the statutory language particular to heirs' claims, and the other categories of damages personal to the heirs. In so deciding, we do not determine whether that particular category of damages is subject to the decedent's pre-death contracts, since NRS 41.100(3) excepts the estate's wrongful death action from its purview and the parties have not briefed this issue. *See Badillo v. Am. Brands, Inc.*, 117 Nev. 34, 42, 16 P.3d 435, 440 (2001) (declining to "consider an issue that has not been fully raised by appellants or meaningfully briefed by either party").

El Jen further argues that the heirs' claims, being derivative of the underlying injury, are also derivative of the decedent's/estate's right to bring a claim and the damages recoverable based on that claim. El Jen supports its argument by comparing wrongful death claims under NRS 41.085 to loss of consortium claims at common law, where we have held that

a spouse's loss of consortium claim is a "derivative claim" that is "dependent upon" the success of the underlying negligence claim. *Turner v. Mandalay Sports Entm't, LLC*, 124 Nev. 213, 221-22 & n.31, 180 P.3d 1172, 1178 & n.31 (2008) (citing *Gunlock v. New Frontier Hotel Corp.*, 78 Nev. 182, 185 n.1, 370 P.2d 682, 684 n.1 (1962), *abrogated on other grounds by Foster v. Costco Wholesale Corp.*, 128 Nev. 773, 291 P.3d 150 (2012)). Loss of consortium claims depend upon the underlying injury and are "derivative in the sense that the beneficiaries would be required to establish [defendant] was liable [to the decedent] for the[ ] . . . underlying injury in order to recover damages." *Labatt*, 279 S.W.3d at 646. But a claim for loss of consortium is not "derivative of" the decedent's claim for the purpose of binding a claimant to arbitration agreements because loss of consortium provides a surviving spouse "an independent action for negligence" that is individual to the surviving spouse. *Bennett v. Topping*, 102 Nev. 151, 153, 717 P.2d 44, 45 (1986); *see also Labatt*, 279 S.W.3d at 646 ("[L]oss of consortium claims are not entirely derivative as are wrongful death claims [in Texas]; . . . they are separate and independent claims distinct from the underlying action.").

All wrongful death statutes, whether "derivative" or "separate," require the plaintiff to prove the defendant's liability for the underlying injury to the decedent. In this sense, wrongful death claims brought by statutory heirs always derive from the decedent's underlying injury. *See Pisano*, 77 A.3d at 659. But the fact that a wrongful death claim is "derivative" in the sense that it derives from the injury to the decedent "does not mean that [the claimant] is subject to any and all contractual limitations—such as an agreement to arbitrate—that are applicable to the decedent." *Carter*, 976 N.E.2d at 359; *see Bybee*, 189 P.3d at 47 (holding

SUPREME COURT
OF
NEVADA

(O) 1947A

16

that, while a wrongful death claim is subject to decedent-created defenses that "go to the viability of the underlying personal injury action," that rule does not extend to contractual provisions such as arbitration agreements that do not affect the action's viability).

Although El Jen argues otherwise, the holdings in *Carter* and *Bybee*, which we adopt as most consistent with Nevada wrongful death statutes and caselaw, do not run afoul of *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012). In *Marmet*, the United States Supreme Court struck down "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes" as "a categorical rule prohibiting arbitration of a particular type of claim [that] is contrary to the terms and coverage of the FAA." *Id.* at 533. But unlike the categorical prohibition in *Marmet*, the rule that a party to an agreement cannot bind a nonparty applies to all sorts of agreements, not just agreements to arbitrate. "Indeed, had the decedent's agreement [in *Carter*] been about choice of law, judicial forum, allocation of costs and fees, confidentiality, or any number of standard contract provisions, the results would have been the same"—the decedent could not have bound the wrongful death claimant to its terms. *Cole v. Granite Nursing & Rehab. Ctr., LLC*, No. 22-cv-312-JPG, 2022 WL 1306333, at *4 (S.D. Ill. 2022) (rejecting argument that the FAA preempts the holding in *Carter*). "[F]ederal law does not force arbitration upon a party that never agreed to arbitrate in the first place under the guise of preemption principles." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 (2016).

## C.

El Jen offers two additional arguments in favor of compelling the heirs to arbitration. First, since both the statutory heirs' claims and the

SUPREME COURT
OF
NEVADA

(O) 1947A

estate's claim must prove the same question of fact—whether the defendant was liable for the decedent's injuries—El Jen argues that as a prudential matter, both claims must proceed in the same venue. Second, El Jen argues that the heirs are equitably estopped from objecting to arbitration. Neither argument carries.

In *Alcantara*, we held that issue preclusion barred the statutory heir from relitigating the issue of liability because the estate had failed to prove liability in a previous case and "the issue of liability is interrelated because both claims are based on the same wrong." 130 Nev. at 262, 321 P.3d at 918. Although it is true that proving a wrongful death claim requires the claimant to prove the same underlying negligence, this does not make a wrongful death claim wholly derivative of the decedent's claim such that the heirs can be compelled to arbitration, despite not having agreed to it. Moreover, as El Jen concedes, issue preclusion as to the common issue of liability does not apply here because El Jen's liability has not yet been litigated. *See Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008) (outlining the four elements of issue preclusion).

El Jen next argues that equitable estoppel binds nonsignatory statutory heirs where they "knowingly exploit[ ] the agreement containing the arbitration clause despite having never signed the agreement." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (internal quotation marks omitted). However, under the doctrine of "direct benefits estoppel," a nonsignatory is not bound to an arbitration agreement simply because its claim relates to a contract containing the arbitration provision. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex. 2005). Instead, this doctrine applies only if the nonsignatory party "seeks, through

the claim, to derive a direct benefit from the contract containing the arbitration provision." *Id.* Here, although the statutory heirs' claims relate to the services El Jen provided Gary, the heirs' wrongful death claims seek to derive privileges granted to them by statute and do not seek a direct benefit from the admission paperwork that included the arbitration agreement. Equitable estoppel thus does not apply.

### III.

El Jen alternatively argues that the district court abused its discretion by failing to stay its proceedings under NRS 38.221(7) pending the outcome of arbitration of the estate's claim against it. An order resolving a request for a stay is reviewed for abuse of discretion, and we will affirm such an order unless the district court's decision is not supported by substantial evidence. *Maheu v. Eighth Judicial Dist. Court*, 89 Nev. 214, 216-17, 510 P.2d 627, 629 (1973).

Nevada has adopted the Uniform Arbitration Act of 2000, 7 U.L.A. 25 (part 1A) (West 2009), codified at NRS 38.206 through NRS 38.248. Under NRS Chapter 38, "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration." NRS 38.221(7). However, "[i]f a claim subject to the arbitration is severable, the court may limit the stay to that claim." *Id.* El Jen argues that NRS 38.221(7) requires the district court to stay the litigation by the heirs against El Jen and RTC because it compelled the estate to arbitration against El Jen. We disagree. As set forth above, NRS 41.085 allows the statutory heirs to pursue separate wrongful death claims that the statutory heirs did not agree to arbitrate. Since the statutory heirs' claims are not subject to an arbitration agreement, it follows that NRS 38.221(7) did not require the district court to stay litigation of their claims. *See also Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 711-12 (2009)

SUPREME COURT
OF
NEVADA

(O) 1947A

19

(applying 9 U.S.C. § 3 to facts analogous to the present case and concluding a stay of proceedings was not required under the FAA). We therefore conclude that the district court did not abuse its discretion in refusing to stay litigation of the statutory heirs' claims against El Jen and the other defendants.

## CONCLUSION

Nevada's wrongful death statute creates a separate cause of action in favor of a decedent's statutory heirs. The heirs' claims are derivative in the sense that they depend on the decedent's personal injury, but they are otherwise independent. As such, a nonsignatory heir's wrongful death claim is not bound to an agreement, like the arbitration agreement in this case, that does not implicate the viability of the underlying personal injury claim. Since the heirs are nonsignatories who are pursuing their own individual claims, we also conclude that the district court did not abuse its discretion in refusing to stay the litigation while the estate proceeds to arbitration against El Jen. We affirm.

_____, J.
Pickering

We concur:

_____, J.
Cadish

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A